Rose Maree **JONES, Plaintiff–Appellant,**

v.

**AERO/CHEM CORP. and Athea Laboratories, Inc., Defendants–Appellees.**

**No. 88–4234.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 1989.

Decided Dec. 11, 1990.

See also 680 F.Supp. 338.

Alexander Blewett, III and Michael J. George, Hoyt & Blewett, Great Falls, Mont., for plaintiff-appellant.

Jack L. Lewis, Francis X. Clinch, and Susan J. Rebeck, Jardine, Stephenson, Blewett & Weaver, Great Falls, Mont., for defendants-appellees.

Before BROWNING and FLETCHER, Circuit Judges and REED, District Judge.[*]

PER CURIAM:

Appellant Rose Maree Jones, formerly a United States Customs Inspector in Montana, appeals from the denial of a motion for a new trial following an adverse jury verdict in her products liability action against Appellees Athea Laboratories and Aero/Chem Corporation (collectively "Athea"), assembler and distributor of the "Curb 20," a hand-held aerosol tear gas spraying device.

[*] The Honorable Edward C. Reed, Jr., Chief U.S. District Judge for the District of Nevada, sitting by designation.

Jones was required to wear the Curb 20 tear gas canister in a holster on her duty belt. While Jones was inspecting a truck, a fold-up armrest fell and struck the top of the Curb 20 unit, discharging the tear gas above her hip. Jones suffered a chemical burn and developed allergic dermatitis which prevented her from returning to work.

The cause went to a jury which returned a special verdict finding "no defect" in the Curb 20. Two days later, counsel for third party defendant Emson Research Company ("Emson"), manufacturer of the component valve and actuator systems, gave counsel for Jones copies of correspondence from Athea to Emson, including a March 20, 1981 letter written by Gary Smith, engineer and Vice President of Athea. Smith's letter indicated Athea considered the actuator system "too sensitive," knew of the possibility of accidental discharge, and discussed remedial measures.[1]

The following day, Jones moved for new trial pursuant to Fed.R.Civ.P. 59, asserting:

1. The March 20, 1981 letter was apparently written in the context of a redesign of the actuator system after Emson had switched from a .010 to a .075 actuator length stem valve and thus rendered the Curb 20 too difficult to fire. In discussing possible solutions, Smith wrote:

> Use of the .010″ acutation length stem valve would still remain as being too sensitive. Should the actuator be inadvertently moved to the fire position in a handbag or pocket, it would easily be fired slightly by any longitudinal pressure from adjacent objects.
> . . . .
> We would guess that if an actuation length of something mid-range, such as .030″–.035″, were used, that all of the relative problems would be overcome. Of course, we do not know all of the problems, but this would seem to be the best correction.
> It would reduce the sensitivity of the .010″ valve. . . .

In an October 5, 1981 letter from Smith to Emson, accepting Emson's revised sleeves for the .075 units, Smith concludes,

> [W]e are still evaluating whether to use the .010-inch or the .075-inch valves for future production. As we commented several months ago, the best overall "fix" on this system would have been to use a valve having an actuation length in the .040 to .045-inch range.

2. We conclude Jones has not waived the misconduct argument.

(1) the newly discovered evidence; (2) prejudicial misconduct in failing to produce the documents in discovery; (3) error in admitting testimony of the absence of prior complaints; and (4) error in admitting testimony that California had approved the Curb 20. At the hearing on the motion, the district court indicated it might later hold a hearing to determine whether Athea's failure to produce the documents involved misconduct. However, the district court denied the new trial motion without holding such a hearing. Jones appealed.

## I. The "Hidden" Documents

■ Our review of the record indicates Jones asked the district court to make two determinations: (1) whether a new trial should be granted because the newly discovered evidence would likely have resulted in a different verdict, and (2) whether defendants' actions constituted misconduct and, if so, whether that misconduct denied Jones an opportunity to present her case fully and fairly.[2]

In her motion for a new trial Jones argued defendants' conduct "in illegally hiding such documents prevented plaintiff from putting on her proof of defect and prevented her from receiving a fair trial." [C.R. 135 at 2–3] In her memorandum in support of her Rule 59 motion, Jones noted the alleged misconduct was a separate ground for relief from that of newly discovered evidence, and argued defendants had "stripped plaintiff of the right to a fair trial," [C.R. 136 at 4–5] citing 6A J. Moore, J. Lucas, & G. Grotheer, *Moore's Federal Practice* ¶ 59.08[2] (2d ed. 1987), discussing new trial motions based on party misconduct. Finally, in her appellate brief Jones argued:

> The District Court initially indicated that a hearing would be held and testimony obtained to determine the nature and degree of culpability of those persons involved in this aberration of justice, however, no such hearing was ever allowed. As it stands, Athea has been permitted to strip Jones of her right to a fair trial and has not been made to appear and explain why these documents were never presented. . . .

Appellant's Brief at 35–36.

Jones first argued that a different, more lenient test was applicable to the misconduct claim in a supplemental letter filed following briefing. As a general rule, we will not consider an issue raised for the first time on appeal, although we have power to do so. *Bolker v. Commissioner,* 760 F.2d 1039, 1042 (9th Cir. 1985). Neither will the court normally consider

### a. Newly Discovered Evidence.

In deciding the Rule 59 motion, both parties argued and the district court applied the test borrowed from cases considering motions under Rule 60(b)(2) for relief from judgment based upon newly discovered evidence. *See* 11 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2859 (1973) ("The same standard applies to motions on the ground of newly discovered evidence whether they are made under Rule 59 or Rule 60(b)(2)."); 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 60.23[4] (2d ed. 1987) (distinction between evidence warranting Rule 59 and Rule 60(b)(2) relief is one of degree rather than kind; Rule 60(b)(2), allowing a more belated attack on a judgment, may require a stronger showing); *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 211–12 (9th Cir.1987).

■ Under this test the movant must show the evidence (1) existed at the time of the trial, (2) could not have been discovered through due diligence, and (3) was "of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Coastal Transfer*, 833 F.2d at 211. We review the district court's determination under this standard for abuse of discretion. *Id.*

The court determined Jones met the first two requirements, but did not satisfy the third. The court concluded it was not likely the documents would have changed the outcome because they only corroborated testimony by Jones' expert. They would have been of de minimis value in light of the theory of defect Jones presented at trial: the Curb 20 was too sensitive in the locked position or moved too easily from the locked to the fire position.

■ Whether knowledge of the newly revealed correspondence would likely have affected the jury's verdict is a close question. Contrary to the district court's view, we think the letters do more than merely corroborate plaintiff's expert testimony; they demonstrate knowledge by Athea of a potential design problem. An admission by the company engineer that the valve was "too sensitive" is substantively different than testimony to that effect by the plaintiff's own hired expert.

However, the letters are not equivalent to a "smoking gun," as Jones argues. Rather than dictating a different result, they would likely have led Jones to prepare and present a different case—taking additional depositions, presenting other witnesses, and arguing a different theory of defect to the jury. Althea, too, would have defended differently. We are not persuaded, however, that the district court abused its discretion in concluding Jones failed to establish the outcome likely would have been different.

### b. Misconduct.

■ The test to be applied when discovery misconduct is alleged in a Rule 59 motion must be borrowed from cases interpreting Rule 60(b)(3), just as the test applied to a Rule 59 motion alleging newly discovered evidence is borrowed from Rule 60(b)(2).[3]

Under Rule 60(b)(3), the movant must, (1) prove by clear and convincing evidence that the verdict was obtained

an issue not argued in the opening brief. *United States v. Loya*, 807 F.2d 1483, 1486–87 (9th Cir.1987).

On balance, we conclude it would be appropriate to exercise our power to review the misconduct issue. Jones did present the core of the legal analysis to the district court in asking the court to hold a hearing to determine if there was misconduct, and if so, whether that misconduct had interfered with her right to a fair trial. Defendants' counsel did not object to consideration of the issue by this court or argue that it had been waived, choosing instead to assert that

the defendants should prevail under the Rule 60(b)(3) standard.

3. Although we have found no case discussing the applicable standard where discovery misconduct is alleged in a Rule 59 motion, the analogy seems inevitable: if, when misconduct was alleged, a stricter standard were applied to a motion under Rule 59 than to one under Rule 60(b)(3), a plaintiff filing within the 10 day period might be unable to obtain a new trial but could thereafter be relieved from the judgment under Rule 60, and thus allowed to begin the litigation all over again.

through fraud, misrepresentation, or other misconduct.

(2) establish that the conduct complained of prevented the losing party from fully and fairly presenting his case or defense. Although when the case involves the withholding of information called for by discovery, the party need not establish that the result in the case would be altered.

*Bunch v. United States,* 680 F.2d 1271, 1283 (9th Cir.1982) (citation omitted). Moreover, as the court said in *Anderson v. Cryovac, Inc.,* 862 F.2d 910 (1st Cir.1988):

Failure to disclose or produce materials requested in discovery can constitute "misconduct" within the purview of this subsection. *See Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339 (5th Cir.1978). "Misconduct" does not demand proof of nefarious intent or purpose as a prerequisite to redress.... The term can cover even accidental omissions—elsewise it would be pleonastic, because "fraud" and "misrepresentation" would likely subsume it.... Accidents—at least avoidable ones—should not be immune from the reach of the rule.

*Id.* at 923. The court in *Anderson* found misconduct within the meaning of Rule 60(b)(3) because plaintiffs demonstrated (1) they exercised due diligence in their discovery requests, (2) defendant knew, or was charged with knowledge, of the missing document, and had constructive (if not actual) possession of it; and (3) defendant did not divulge the document's existence. *Id.* at 928.

■ Regardless of whether there was misconduct, Athea argues this court should find the letters cumulative, corroborative and of de minimis value under the Rule 60(b)(3) test of "full fair opportunity to present one's case" based on the district court's finding to that effect under the Rule 60(b)(2) "different outcome" test. We disagree. If Jones is able to demonstrate misconduct, the district court must make a fresh determination whether Jones has demonstrated "substantial interference" by showing "the material's likely worth as trial evidence or by elucidating its value as a tool for obtaining meaningful discovery." *Id.* at 926. As noted earlier, the letters were much more than merely corroborative or cumulative evidence. And, further, as we also have noted, evidence that was merely cumulative under the "different outcome" test, may have substantially interfered with Jones' ability to fully and fairly present her case—for example, concealment of Athea's statement the valve was too sensitive may have "precluded inquiry into a plausible theory of liability." *Id.* at 925. Additionally, Jones may be able to benefit from a presumption of substantial interference if she can demonstrate the misconduct was sufficiently knowing, deliberate or intentional. *See generally id.* at 923–27 (summarizing the applicable standards and burdens of proof).

It does not appear the district court considered the alleged misconduct in deciding Jones' Rule 59 motion; the district court did not hold a hearing to determine whether there had been misconduct, either knowing or accidental, nor did it make findings on this issue.[4] We therefore remand to the district court for appropriate proceedings to determine whether Jones can meet her burdens under the Rule 60(b)(3) standard as applied to this Rule 59 motion.[5]

II. Evidentiary Issues

■ a. Jones argues a proper foundation was not laid for the admission of testimony of Althea's employees that Althea had not received complaints from customers that the Curb 20 accidentally discharged or that the actuator accidentally

---

4. It is understandable the district court did not hold a hearing or make findings on whether misconduct had occurred and if so, whether it denied Jones a full and fair trial since the Rule 60(b)(3) standard was not expressly called to the district court's attention. Nonetheless, for reasons stated in note 2, we conclude Jones has not waived the misconduct argument.

5. The district court stayed its consideration of Jones' motion for discovery sanctions pending decision by this court on the substantive appeal. We note the district court's finding on the new trial motion is not co-extensive with its determination of the discovery sanctions motion. Discovery misconduct may be sanctionable whether or not it justifies a new trial. *Id.* at 924 n. 11.

moved from the locked to the firing position.

The district court's finding that the three-quarters of a million Curb 20 units sold from 1979 onward were substantially identical, despite slight variation from unit to unit, was not clearly erroneous. The court did not err in determining the absence of reports of prior accidents occurred in circumstances sufficiently similar to Jones' situation to allow the jury to connect past experience with the accident sued upon. Substantial evidence supported the trial court's finding that the witnesses who testified on the subject were in a position to know of any complaints regarding the Curb 20. Jones' argument that the testimony regarding lack of complaints was factually untrue in light of the "hidden" letters and the existence of another civil complaint goes to the weight of the testimony, not its admissibility. Of course, one of the considerations in ruling on the Rule 59 motion will be the possible impact the letters might have had in countering this evidence in the jurors' minds.

In sum, the district court did not abuse its discretion in concluding there was sufficient foundation evidence to admit the testimony regarding lack of complaints to rebut Jones' claim the Curb 20 was defectively designed.

■ b. Jones also appeals the admission of testimony suggesting California had specifically approved the Curb 20. The witness' reference ("when California came out and approved the product for use by civilians") is ambiguous as to whether the witness was referring to tear gas products in general or the Curb 20 specifically. Moreover, even if the reference were to the Curb 20, it was insignificant in the context of the whole record and its admission, if error, was harmless.

**REVERSED AND REMANDED.[6]**

EDWARD C. REED, Jr., Chief District Judge, dissenting:

I respectfully dissent. A full jury trial has been conducted in this case. After what were presumably careful deliberations, the jury returned a finding of "no defect" in the Curb 20. To challenge this verdict, and request a new trial, plaintiff should be required to make some showing beyond mere rhetoric. I agree with the majority that under Rule 60(b)(3), and hence Rule 59, the plaintiff must (1) prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct, and (2) establish that the misconduct prevented the plaintiff from fully and fairly presenting her case. However, I am not convinced that plaintiff has demonstrated the ability to do either.

**I. Clear and Convincing Evidence of Misconduct**

Plaintiff must establish misconduct by clear and convincing evidence. To be entitled to a hearing on the issue, plaintiff must at least make some preliminary showing, which, if believed, would show her ability to demonstrate misconduct.

Plaintiff does not appear to have made such a showing with respect to defendant's failure to produce Smith's letters. Despite the majority's reading of *Anderson v. Cryovac, Inc.*, 862 F.2d 910 (1st Cir.1988), as defining misrepresentation (and hence misconduct) very broadly, misrepresentation still retains at least some requirement of fault. Indeed, the *Anderson* court apparently considered only those discovery responses "so ineptly researched or lacka-

---

**6.** During the pendency of this appeal, Jones moved to stay these proceedings and remand to the district court to allow her to file a Rule 60(b)(6) motion based upon additional allegedly "hidden" documents she has recovered. This opinion moots Jones' motion to stay and remand.

On remand, Jones may file her Rule 60(b)(6) motion in the district court. We express no opinion whether such a motion could be timely, *see LaFarge Conseils et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1338 (9th Cir.1986); *but see United States v. Sparks*, 685 F.2d 1128, 1131 (9th Cir.1982), or if timely, whether the circumstances are sufficiently extraordinary to merit relief.

daisical" as qualifying as misrepresentations. *Id.* at 923.

Plaintiff has not demonstrated the ability to prove by clear and convincing evidence that defendant had Smith's letters in its possession. Plaintiff resorts to an inference that those who write letters normally keep copies. This may often be true. However, Smith, who wrote the letter, has since left the company. Even if he originally had a copy, one can only speculate that it was retained. The inference is thus weakened. As it hardly seems that plaintiff can prove even *possession* of the letters by *clear and convincing* evidence, plaintiff cannot prove, under the same standard, that failing to *produce* the letters upon discovery request was misconduct.

However, interrogatories 11 and 46 also asked defendant to *describe* all efforts to prevent accidental discharge of the Curb 20 and all documents relating to the design of the Curb 20. The case here is closer, for perhaps defendant should be charged with knowledge of these letters, even if it did not possess them. Plaintiff has not demonstrated that it can prove by clear and convincing evidence that defendant knew of these letters yet failed to describe them. Plaintiff only points to defendant's failure to call Smith as evidence that defendant knew of the letters and was trying to hide them. Again, plaintiff relies on a very weak inference—far from *clear and convincing* evidence.

It might perhaps be inferred in certain circumstances that defendant should have known of these letters. However plaintiff cannot prove that defendant even had the letters. Furthermore, Smith, the author, the only employee plaintiff can show knew of the letters, had left the company. Plaintiff has not demonstrated an ability to show by clear and convincing evidence that defendant should have known about the letters. In fact, plaintiff offers no real evidence that defendant did know, or should have known, other than cavalier assertions that defendant attempted to hide the letters.

Therefore, since plaintiff does not appear able to demonstrate any misconduct, even merely ineptly researched or lackadaisical discovery responses, by *clear and convincing* evidence, the district court did not abuse its discretion in failing to hold a hearing after a request based merely on such unsupported allegations.

## II. Substantial Interference with Ability of Plaintiff to Fully and Fairly Present Her Case

As the majority recognizes, substantial interference may be demonstrated by showing either "the material's likely worth as trial evidence or by elucidating its value as a tool for. obtaining meaningful discovery." *Anderson,* 862 F.2d at 926.

### A. Likely Worth as Trial Evidence

Even if misconduct occurred, plaintiff does not deserve a new trial merely to get the opportunity to present cumulative evidence. As the court in *Anderson,* described it,

> [C]oncealed evidence may turn out to be cumulative, insignificant, or of marginal relevance. If that be the case, retrial would needlessly squander judicial resources. The solution, we believe, is that before retrial is mandated under Rule 60(b)(3) in consequence of discovery misconduct, the challenged behavior must *substantially* have interferred with the aggrieved party's ability fully and fairly to prepare for and proceed at trial. 862 F.2d at 924 (emphasis in original).

Here, the district court, after observing the entire trial, concluded that the letters were of de minimis value, and merely corroborated plaintiff's expert. Thus their "likely worth as trial evidence" has already been found to be minimal. This ruling hardly seems to be one that this Court is in a position to conclude is an abuse of discretion. In fact, despite the majority's disagreement with the district court on this issue, the majority does not really claim that it knows better than the trial judge how helpful the letters would have been in the trial as it occurred.

### B. Value as Discovery Tool

Instead, the majority apparently believes that the letters' value would have been as a

"tool for discovery" and would have affected plaintiff's preparation and changed the theory of defect that plaintiff argued. It is hard to see how. I agree with the majority: the letters show knowledge by defendant "of a potential design problem." Yet that is too general. If the letters had described fading paint on the unit, that too would be a design problem. However, the design problem must be relevant to a new theory of liability in this case. The precise problem that the letters describe is that the unit fired too easily in the "fire" position.

On the one hand, plaintiff in fact claims she already argued this theory. Thus, according to plaintiff, this evidence does not open up any new theory.

Yet, on other hand, it is hard to see how this "defect" would be relevant to *any* theory of liability in this case. The majority has not offered any examples of such a theory. Indeed, defendant readily admitted that the unit would fire in the "fire" position. Thus, it is hard to see how plaintiff would have been assisted by these letters—they were not relevant to any possible theory of liability.

The letters had little value as trial evidence or as a tool for discovery. Even if plaintiff was denied them as a result of misconduct, their absence did not substantially interfere with plaintiff's ability to fully and fairly prepare for and proceed at trial.

I conclude, therefore, that plaintiff has not demonstrated the ability to show misconduct by clear and convincing evidence. Furthermore, since plaintiff cannot establish that its ability to fully and fairly present its case was hampered, I see no reason to require the district court to hold a hearing on misconduct. Therefore, I would affirm the district court's ruling.