Maria Teresa DE SARACHO; Eureka Canners Group, S.A., a corporation formed under the laws of Mexico; and Eureka Mexicana, S.A., a corporation formed under the laws of Mexico, Plaintiffs,

v.

CUSTOM FOOD MACHINERY, INC., a California corporation; Ron McNiel, Sr.; Fred Avalli, and DOE 1 through DOE 25, inclusive, Defendants.

And Cross–Related Action

No. C–95–20854–RMW.

United States District Court,
N.D. California,
San Jose Division.

Sept. 16, 1998.

William J. Keegan, The Keegan Law Firm, San Jose, CA, for plaintiffs.

Thomas V. Loran, John M. Grenfell, Erich F. Lichtblau, Pillsbury, Madison & Sutro LLP, San Francisco, CA, for defendants.

## MEMORANDUM OF DECISION ON MOTION UNDER FED.R.CIV.P. 60(b)(3)

INGRAM, Senior District Judge.

The instant motion follows a jury trial which resulted in a verdict in favor of Plaintiffs above named and against Defendants above named. Judgment was entered upon that verdict. Defendants Ron McNiel, Sr. and Custom Food Machinery were found liable for intentional misrepresentation, negligent misrepresentation, and conspiracy, and monetary compensatory damages were assessed against them.

Following trial, and within one year of the entry of judgment, Defendants Custom Food Machinery, Inc. and Ron McNiel, Sr., (herein called "Movants"), have moved under Fed. R.Civ.P. 60(b)(3) and Local Rule 7–2 for relief from the judgment heretofore entered upon jury verdict. Plaintiffs Maria De Saracho, Eureka Canners Group and Eureka Mexicana are herein called "Respondents."

## MOVANTS' CONTENTIONS

Movants make the following contentions in support of their motion:

1. Respondents systematically suppressed the truth concerning Respondents Maria De Saracho's and Eureka Canners Group's litigation with Banco De Credito Rural De Pacifico Norte, SNC, hereinafter called "BanRural" which was predicated upon allegedly defaulted loans made by BanRural to Respondents Eureka Canners Group and Maria De Saracho in that Respondents failed to produce their own pleadings in that Mexican action which set forth their defenses to that action, when the production of those pleadings was clearly within the scope of discovery propounded by Defendants, including Movants herein. Movants also contend that as a part of their suppression of the truth Respondents introduced false testimony at trial as to the amounts owed by Respondents to BanRural, which amounts constituted a substantial portion of the damages claimed by Respondents in the instant case. Movants contend further that Respondents failed to supplement their dis-

covery responses to disclose the fact that the Mexican action against Respondent Eureka Canners Group was dismissed prior to the trial of the instant case.

2. Respondents suppressed the accounting records of Respondent Eureka Canners Group which showed that a $1,050,000 capital contribution allegedly fraudulently made to Custom Food Machinery by Defendant Fred Avalli was in fact recorded as having been made jointly by Avalli and by Respondent Eureka Mexicana, a corporation owned by Mr. De Saracho. Movants contend that if the $1,050,000 was in fact fraudulent, the De Sarachos were themselves parties to the fraud and had knowledge of it, and that their testimony to the contrary at the trial of the instant case was untruthful and false.

3. Respondents and their expert, Mr. Degnan, testified falsely at trial with respect to the monies due and owing to BanRural at the time of the trial of the instant case.

■ Movants are required to prove the assertions cited above by clear and convincing evidence, but are not required to prove nefarious intent or purpose. The term "misconduct" as used in the Rule covers even accidental omission. *Jones v. Aero/Chem Corp.*, 921 F.2d 875 (9th Cir.1990). In order to prevail upon this motion Movants must prove by clear and convincing evidence that the conduct of Respondents was fraudulent or constituted misrepresentation, or constituted misconduct, and that Movants were thereby prevented from fully and fairly presenting their defense at the trial of the instant case. Movants must prove that the challenged behavior substantially interfered with their ability to prepare for and to proceed to trial, *Anderson v. Cryovac Inc.*, 862 F.2d 910 (1st Cir.1988).

## RESPONDENTS' CONTENTIONS

In responding to Movants' Rule 60(b)(3) motion, Respondents contend:

1. No judgment of dismissal was ever entered in the Mexican suit.

2. Respondents did not suppress the pleadings in the Mexican suit. They contend that those pleadings do not fall squarely within the scope of Respondents' initial required disclosure or of Defendants' initial document request. It has been admitted by Movants in connection with another proceeding that trial counsel representing Movants in the instant case conducted no pretrial discovery of any kind other than the depositions of Respondents and of Respondents' expert witnesses.

3. Respondents did not suppress the accounting records of Eureka Canners Group, S.A. Respondents have had neither custody nor control over those records since May of 1985, and still have neither custody nor control over those records. Respondents contend further that no request was ever made by Movants for the production of the Eureka Canners Group's accounting records, and that the accounting records under consideration do not fall squarely within the scope of Respondents' initial required disclosure or of Movants' initial document request.

4. Respondents presented no false or misleading testimony concerning the amount owing on the BanRural loans.

5. The Motion for Relief from Judgment is untimely as not made within a "reasonable time."

6. Movants should be sanctioned and censured.

7. Rule 60(b)(3) requires exercise of due diligence by Movants when failure to respond to discovery and consequent "misconduct" within the meaning of Rule 60(b)(3) is an issue. Movants did not exercise due diligence.

## DECISION

The Motion of Custom Food Machinery and Ron McNiel, Sr. under Fed.R.Civ.P. 60(b)(3) is denied. The court finds no clear and convincing evidence of fraud, misrepresentation or misconduct on the part of Respondents or any of them.

## DISCUSSION

### I.

### STANDARD OF RELIEF UNDER RULE 60(b)(3)

■ Movants must prove by clear and convincing evidence (1) that the verdict of

which they seek to be relieved was obtained through fraud, misrepresentation, or other misconduct and (2) that the conduct complained of prevented Movants from fully and fairly presenting their case on defense. *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878, 879 (9th Cir.1990). Rule 60(b)(3) relief is aimed at judgments which were unfairly obtained, not at those which are factually incorrect. *In Re M/V Peacock,* 809 F.2d 1403, 1405 (9th Cir.1987). Factually incorrect judgments are subject to Rule 60(b)(2) consideration. *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339 n. 4 (5th Cir.1978).

■ Where "misconduct" is predicated upon a failure to respond to discovery movants must show: (1) they exercised due diligence in their discovery requests; (2) respondents knew or were charged with knowledge of the document not produced and had actual or constructive possession of it; (3) that respondent did not divulge document's existence. *Anderson v. Cryovac, Inc.,* 862 F.2d 910 (1st Cir.1988); *Jones v. Aero/Chem Corp, supra.*

## II.

## FAILURE TO PRODUCE RESPONDENTS' PLEADINGS FILED IN BANRURAL CASE

■ Movants contend that Respondents were obligated to produce the pleadings filed by them in the Mexican *BanRural* lawsuit both in their required Rule 26(a) disclosure and responsively to Movant Custom Food Machinery's Request for Production of Documents filed in May 1996, (Loran Decl. ¶ 7 Ex. C.). Movants contend that the defensive pleadings should have been produced in response to Document Request No. 3:

All documents which reflect monies borrowed to finance the purchase of machinery and equipment for the Culiacan plant which is the subject of plaintiffs' complaint.

and to Document Request No. 4:

Any and all documents which show, evidence or relate to monies borrowed by plaintiff for use as operating capital including start-up costs related to plaintiff's plant which is the subject of plaintiff's complaint on file herein.

Movants contend that the Rule 26 requirement that without waiting for a discovery request copies of documents which are "relevant to disputed facts alleged with particularity in the pleadings" be voluntarily produced and that the BanRural loans are alleged with particularity in paragraphs 14, 26 and 28 of the Complaint and that Respondents' pleadings in defense of an action on the loans is "incontrovertibly relevant" to those allegations. Further, Movants contend that the pleadings should have been produced under Rule 26(a)(1)(c) requiring production of documents on which damages are based, (Complaint ¶ 26.)

Movants citing 2 Schwarzer, Federal Civil Procedure Before Trial, § 11:713 (1998) and *In Re Folding Carton Antitrust Litigation,* 76 F.R.D. 420 (N.D.Ill.1977) contend that the test of what documents are sought in a given document request is "whether a respondent of average intelligence would know what items to produce." This court accepts that test as a valid one.

It appears questionable to the Court that the Mexican case pleadings were producible under the provisions of Fed.R.Civ.P. 26(a)(1)(c) in view of the particularity of the allegations contained in the Complaint in paragraphs 14, 16, and 28 which are the applicable charging allegations relied on in Movants' Motion. Those allegations do not allege with particularity any legal action or lawsuit by and between Movants and Respondents. Nor do the document production requests [Numbers 3 and 4] appear to the court to be of such a nature as would guide "a respondent of average intelligence" to produce lawsuit pleadings, which do not reflect, show, evidence or relate monies borrowed to finance the purchase of machinery and for use as operating capital, but only Respondents' defense to a suit to recover upon defaulted notes and/or to exercise a remedy akin to the non-judicial foreclosure of a chattel mortgage.

Although not cited in Movants' memoranda, Movants' counsel at the hearing conducted on September 10, 1998, directed the court's attention to the allegations contained

on page 10 of the Complaint, lines 2–8, as follows:

In addition, plaintiffs have been damaged by defendants' misrepresentations in the following ways: the value of Plaintiff De Saracho's land has been diminished by the amounts due and in default on loans which were secured by liens on that land; ...

That allegation relates to the diminution in value of Mrs. De Saracho's land which was pledged as collateral in the loan transaction. It is not clear from the evidence how Movants' presentation of their case would have been enhanced by the Respondents' Mexican lawsuit pleadings. That action, which according to Mr. De La Rocha, seeks an order permitting entry onto the business premises of Eureka Canners Group for the purpose of appraising trust assets *there located.* It appears to the court that the allegation set forth does not make it clear to a respondent of average intelligence that one should produce the Mexican lawsuit pleadings pursuant to Fed.R.Civ.P. 26 or responsively to Document Requests 3 and/or 4. If this allegation is subject to a contrary interpretation then it appears to this court that counsel know that pleadings in lawsuits are usually kept in the files of courts, and minimal diligence in conducting an inquiry as to the identity and location of the court in question would have easily produced the pleadings, if they were desired by counsel.

The pleadings, which allege apparently a claim for an order of entry, inspection and appraisal and not for monetary relief, would not have disclosed to Movants the disparity between the interest rate specified in the loan agreements and notes and the interest which the bank's attorney states was actually charged. Movants contend that the answers filed by Respondents in the BanRural litigation reveal Respondents' knowledge that the interest rate actually charged by the bank was lower than the rate set by the terms of the loan documents. Movants contend that the failure of Respondents to reveal that knowledge violated Respondents' duty to respond fully to discovery and prejudiced Movants' defense and misled the jury. The evidence relied upon by Movants is a portion of the allegations in BanRural's Complaint in a section headed "Groundless Objections [of Respondents] to the Attachment Execution of the Guaranty Trust" which set forth Respondent's "Objection" as to the statements used to establish the amount of indebtedness as indefinite, non-existent in the financial market and not set in accordance with law. The language set forth in Ex. 407 is not identical to that set forth in Movants' Memorandum, 19:23, and the court does not construe the "objection" as constituting evidence of knowledge on the part of Respondents that an incorrect interest rate was charged.

Even if Respondents believed that the bank was charging a lower rate than that provided in the agreements, this circumstance does not clearly convince the court that the terms of the note were thereby somehow amended and that Respondent's liability to the bank was thereby rendered less.

### III.

### FAILURE TO PRODUCE INTERNAL ACCOUNTING RECORDS OF EUREKA CANNERS GROUP

The evidence reveals that Respondents lost control and access of the records in question in May of 1995 and never regained access to the records. (Decl. of Keegan, ¶¶ 8 and 9, at 4 and 5; RT 413:1–4; 413:24–414:2; 414:20–415:10; 995:9–10.01:21.)

No evidence is asserted that during the period covered by the instant case Respondents had actual or constructive possession of the records.

The Court finds no clear and convincing evidence supportive of the suppression of the records in question.

At the hearing conducted on September 10, 1998, counsel for Movants suggested that even if Respondents did not have the records they still had the computer in which the records were stored, and that they should have had the disk drive examined by one skilled in the art of recovering information from computers. There is no evidence in the record that such an investigation is possible, feasible or productive.

## IV.

### FALSE TESTIMONY AT TRIAL BY DEGNAN AND RESPONDENTS DE SARACHO

Movants' claim that Respondents introduced false testimony at trial as to the sums totally due under the BanRural notes is not supported by clear and convincing evidence. Degnan testified that his conclusions were reached on the basis of the documents furnished to him, including the notes in issue in the Mexican litigation, and that he performed his calculations in the manner which he described. According to the testimony of J. Hallam Dawson as contained in his declaration filed herein on April 8, 1998, and of Luis De La Rocha Zazueta as contained in his declaration of September 7, 1998, the interest rate relied upon by Mr. Degnan was indeed included in the notes in question, but was different than that used by the bank in computing interest due, and in default. Remarkable as this seems, if there was such a difference, knowledge of it cannot be attributed to Respondents by clear and convincing evidence because there is no evidence that Ban-Rural ever informed Respondents of its election to accrue interest at a rate never agreed upon by the parties and never the subject of any modification of the loan documents. The contention that Respondents offered false and perjured testimony through Mr. Degnan is not supported by clear and convincing evidence. Reference is made in the Dawson Declaration to a written demand served upon Respondents by BanRural in April 1995. Those notices are in evidence as Respondents' Exhibits 401–E, 402–E, 403–E and 404–E, (RT 9 at 1697:3–14). If the bank erred in its preparation of loan documents, it is difficult to discern either perjury, deliberate falsehood or suppression of evidence with respect to interest calculation on the part of either Mr. Degnan or of Respondents.

As already stated, Movants must offer clear and convincing evidence of fraud, misrepresentation or misconduct on the part of Respondents in order to prevail upon this Motion. A key point on this Motion is whether the evidence of the amount owing BanRural under the several notes and agreements of indebtedness was in fact a true and correct amount, and, if it was not, why was the amount presented as an incorrect total, and of most vital importance was the incorrect presentation to the jury the result of fraud, misrepresentation or misconduct on the part of Respondents.

Far from being clear the evidence surrounding this perplexing problem is shrouded in uncertainty and it is difficult to regard the evidence supporting Movants' contentions as convincing.

The documents evidencing the indebtedness are in evidence. (Exhibits 126, 381, 386, 388, 389.) The record does not reveal any change or amendment of the interest rate contained in those exhibits. It is clearly stated in the Declaration of Luis De La Rocha Zazueta, attorney for BanRural, that the Declarant reviewed (1) the statement of Eureka Canners Group account at the Ban-Rural prepared by the latter's accounting department; (2) written agreements between Eureka Canners Group and BanRural concerning the loans (the loan agreements); (3) promissory notes evidencing Eureka Canners Group's indebtedness on the loans, as well as other documents. It is further stated that at all times BanRural charged both normal and moratory interest at a rate which is different from and lower than the interest rate set forth in the loan agreements and promissory notes. Mr. De La Rocha does not explain the reason for the inconsistency.

Clearly, in these circumstances the court cannot possibly conclude that Mr. Degnan and the De Sarachos willfully testified falsely as to the amounts due on the notes at the time of trial. There is no evidence whatever that Respondents were ever notified by Ban-Rural or anyone else that the interest rate contained in the bank's records and computations was different from that agreed upon between the parties in the loan agreements.

Movants have urged consideration of the fact, which is not disputed, that the action filed by BanRural did not seek monetary damages at all, but only an order permitting appraisers to enter upon the premises where collateral machinery and goods were in order to facilitate foreclosure. It is clear that, in the event that the total indebtedness under

the loan agreements exceeded the sum realized by foreclosure on the collateral, a further action to recover the deficiencies remaining, if any, would be needed to make BanRural whole. This circumstance does not render the testimony at trial incorrect or false in any respect. The issue presented by Respondents at trial was total indebtedness, not the modalities of recovery. Movants have not been improperly hindered in the presentation of their case by these circumstances.

It is·of interest to note that Movant Ron McNiel, Sr. had the means of knowledge, if not actual knowledge, of particulars of Respondents' liability to BanRural in connection with settlement negotiations conducted on his behalf prior to the trial of this action by Ann Jones, Esq. and Monica Leith. Memoranda of those conversations were given to Mr. McNiel and to Dale Dawson, Esq., his then counsel. (Decl. of Keegan filed May 19, 1998—Ex. T.) If Mr. McNiel knew of the bank's position as to the sum due it at or before trial, it is difficult to discern a significant impediment to his ability to fully prepare and present his case.

## V.

### FAILURE TO ADVISE OF PROCEDURAL PROGRESS OF BANRURAL CASE

Movants contend that an order entered by a Mexican court in the BanRural case in March of 1997, prior to the trial of the instant case, constituted a judgment of dis-. missal of that case and should have been disclosed. The action of the court was a determination of a "dilatory defense" raised by Respondents which was determined in their favor and was later reversed by a Mexican Appellate Court. (Decl. of Salcido; Supplemental Decl. of Aznar.) While Mr. Aznar states in his Supplemental Declaration that the BanRural case was *dismissed* for lack of standing of the bank's representative, Mr. Salcido states in his Declaration that the judge's order of March 1997 was an "interlocutory sentence" involving an "incidental" question. (Salcido Decl. Ex. B.) Mr. Salcido states that such an interlocutory sentence is not a dispositive dismissal which termi-

nates the action. He states that the Ban-Rural case has not been terminated.

Thomas Heller, called as an expert witness on Mexican law by Respondents, testified that the BanRural case is "viable." (RT 1893:19–1894:11.) Movants point out that the knowledge of the interlocutory sentence would have been of aid on cross of Mr. Heller and of Mr. and Mrs. De Saracho. Perhaps it would have been. However, if a new trial were ordered based on a failure to disclose the interlocutory sentence which has now been reversed that particular avenue of cross examination would not be available and Evidence Rule 403 would most certainly prevent inquiries into the vagaries of Mexican procedural law.

Clear and convincing evidence does not support the failure to advise of the entry of the interlocutory sentence as fraud, misrepresentation or misconduct.

## VI.

### COMPLICITY OF RESPONDENTS IN ANY FRAUD INHERENT IN AVALLI'S WORTHLESS CHECK FOR $1,050,000

The records which Movants claim would substantiate complicity of Respondents De Saracho in any fraud perpetrated by Co-Defendant Avalli by his deposit with Movant Custom Food Machinery his ·worthless check for $1,050,000 are contained in the minutes of the stockholder's meeting which show the capitalization of that sum, one-half to Cesar De Saracho and one-half to Avalli. *See* Ex. 384.

These minutes were part of the records to which Respondents had no access during the pendency of the instant case. *See* Section II, *supra.* There is no evidence at all that Respondents suppressed those records.

Furthermore, there is no evidence that at the time the records in question were created Respondents knew that the Avalli check was in fact worthless.

Movants have not shown by clear and convincing evidence that the judgment in this action was unfairly obtained by withholding

evidence of the records of Eureka Canners Group on the notes or by presenting false trial testimony.

## VII.

## DUE DILIGENCE

Respondents contend that Movants must demonstrate by clear and convincing evidence that they exercised due diligence in exercising their rights of discovery. Respondents assert that a showing of due diligence is a necessary element in the proof of misconduct by means of suppression of evidence.

The Ninth Circuit in *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 879 (9th Cir.1990) has cited with approval *Anderson v. Cryovac, Inc.*, 862 F.2d 910 (1st Cir.1988) in which the elements of misconduct within the meaning of Rule 60(b)(3) are said to be:

1. That Movants must demonstrate that they exercised due diligence in their discovery requests.

2. That Movants must demonstrate that the responding party knew or was charged with knowledge of the missing document and had actual or constructive possession of it.

3. That Movants must demonstrate that responding party did not divulge the document's existence.

The *Anderson* Court said further at page 928,

"The compelling conclusion that Appellee's failure to make discovery comprised misconduct within the ambit of Rule 60(b)(3) stands on a solid tripodal base: (1) plaintiffs exercised due diligence in initiating their discovery requests; (2) Beatrice knew, or was charged with knowledge, of the Report, and had constructive (if not actual) possession of it; and (3) Beatrice did not divulge the Report's existence."

This interpretation has been adopted by at least two district courts in this circuit: *See Intel Corp. v. Advanced Micro Devices, Inc.*, 1993 U.S. Dist. LEXIS 18174, 1993 WL 135953 (N.D.Cal.1993); *McCormick v. Cohn*, 1992 U.S. Dist. LEXIS 21187, 1992 WL 687291 (S.D.Cal.1992). In *Pacific and Arctic Railway v. United Transportation Union*, 952 F.2d 1144 (9th Cir.1991), the Ninth Circuit listed exercise of due diligence as a necessary element to a showing of fraud under Fed.R.Civ.P. 60(b)(3).

Since this court does not find clear and convincing evidence of fraud committed by Respondents the only issue under Rule 60(b)(3) is whether "misconduct of an adverse party" within the meaning of the Rule occurred. As shown by activities undertaken by Movants in connection with matters before the Bankruptcy Court, normal and usual discovery efforts would have yielded to Movants the information of which they claim to have been deprived by the purported misconduct of Respondents.

Movants have failed to prove by clear and convincing evidence misconduct on the part of Respondents sufficient to relieve Movants of the judgment upon jury verdict against them.

## VIII.

## TIMELINESS OF THE MOTION

The Motion for Relief From Judgment Pursuant to Rule 60(b)(3) was timely filed.

## IX.

## SANCTIONS

Respondents' request for sanctions is denied.

## X.

## CONCLUSION

No act or omission on the part of Respondents constituted fraud, misrepresentation or misconduct of an adverse party. While the judgment *may* be incorrect factually it is not a judgment which was unfairly procured. Motion for Relief From Judgment Under Fed.R.Civ.P. 60(b)(3) is denied.