206 F.3d 874 (9th Cir. 2000)
 MARIA TERESA DE SARACHO,EUREKA CANNERS GROUP, S.A., a corporation formed under the laws of Mexico; EUREKA MEXICANA SA,a corporation formed under the law of Mexico,Plaintiffs-Appellees,
v.
CUSTOM FOOD MACHINERY INC., a California corporation; Ron MCNEIL, SR., Defendants-Appellants,
and
FRED AVALLI, and DOE 1 through DOE 25, inclusive, Defendant-Appellant.
 Nos. 98-15003,98-15007,98-17051
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted December 8, 1999
Submission Vacated December 15, 1999
Resubmitted January 27, 2000
Decided March 3, 2000
 
 [Copyrighted Material Omitted]
 COUNSEL: Thomas V. Loran, III, Pillsbury, Madison & Sutro, San Francisco, California, for the defendants-appellants.
 William J. Keegan, The Keegan Law Group, San Jose, California, for the plaintiffs-appellees.
 Appeals from the United States District Court for the Northern District of California; William A. Ingram, District Judge, Presiding. D.C. No. CV-95-20854-WAI
 Before: Myron Bright,[1] Harry Pregerson and William A. Fletcher, Circuit Judges.
 Opinion by Judge Pregerson; Dissent by Judge Bright
 PREGERSON, Circuit Judge:
 
 
 1
 This appeal requires us to review four procedural decisions made by the district court before, during, and after a jury trial that resulted in a $12.5 million verdict against defendants. Defendants contend that the district court erred in denying (1) a motion in limine seeking dismissal of one plaintiff; (2) a motion to strike expert testimony; (3) a motion for a new trial; and (4) a motion for relief from judgment. We have jurisdiction under 28 U.S.C. S 1291, and we affirm the district court's denial of all four motions.
 
 
 2
 * Plaintiffs in this suit are Eureka Canners Group, S.A. ("ECG"), Maria De Saracho, and Eureka Mexicana, S.A. ("Mexicana"). Defendants are Custom Food Machinery, Inc. ("Custom"), Fred Avalli ("Avalli"), and Ron McNeil, Sr. ("McNeil"). ECG is a Mexican corporation that was formed in 1993 by Maria De Saracho, Mexicana's owner Cesar De Saracho, and Avalli to process and can tomatoes in Sinaloa, Mexico. Custom is a California corporation that sold food processing equipment to ECG. McNeil is Custom's president and controlling shareholder.
 
 
 3
 Shortly after its formation, ECG took out three loans from Banco de Credito Rural del Pacifico Norte, S.N.C. ("BanRural"), a Mexican bank, totaling more than $3.3 million. Maria De Saracho guaranteed the BanRural loans, executed promissory notes on the loans, and pledged her property as collateral. In May 1995, BanRural declared ECG's loans in default. The following month, ECG filed a lawsuit against BanRural in Mexican court, seeking to invalidate the trust agreement between Maria De Saracho and BanRural and to release the assets pledged as collateral for the loans. Later that year, BanRural filed an action against ECG in Mexican court ("BanRural litigation" or "BanRural suit"), seeking court orders designating an appraiser to value the assets pledged to the trust and allowing BanRural's representatives to enter ECG property to value its assets. BanRural did not seek a money judgment against ECG or Maria De Saracho. In March 1997, the Mexican court ruled that BanRural's representative lacked authority to sue in BanRural's name. In May 1998, a Mexican appeals court reversed that ruling.
 
 
 4
 Plaintiffs filed this lawsuit in December 1995, asserting claims for fraud, conspiracy to defraud, and breach of fiduciary duty. The case was tried before a jury during June and July 1997. At trial, plaintiffs attempted to prove that (1) defendants misrepresented that Avalli made a capital contribution to ECG of $1,050,000; (2) Maria De Saracho guaranteed the BanRural loans in reliance on that representation; (3) defendants misrepresented the value and quality of tomato processing equipment sold by Custom to ECG, causing the tomato processing business to fail; and (4) Custom paid kickbacks to Avalli. Plaintiffs sought damages for liability on the amount due on the BanRural loans in the sum of $11,395,457; ECG's lost profits which plaintiffs' expert testified exceeded $15,000,000; consequential damages; emotional distress; and reputational injury.
 
 
 5
 To prove the amount ECG owed to BanRural on the defaulted loans, plaintiffs introduced into evidence the loan agreements and promissory notes. Plaintiffs also presented two expert witnesses. Stephan Degnan, a certified public accountant, testified that the interest rate provisions in the loan documents required ECG to pay a default interest rate that was 1.5 times greater than the higher of the Mexican TBill rate or BanRural's cost of funds. Based on those provisions, Degnan calculated that $11,395,457 was owed to BanRural. An expert in Mexican law testified that BanRural had a viable cause of action under Mexican law to collect on the defaulted loans. Defendants did not present any evidence about the amount due on the loans or the viability of a foreclosure suit by BanRural. The jury awarded plaintiffs $12,516,000 in damages.
 
 
 6
 After the trial ended, defendants acquired new evidence purportedly proving that ECG owed significantly less than $11 million on the BanRural loans. According to defendants, Degnan mistakenly relied on the interest rate provision in the loan documents. They claim that as of February 1998, the sum of $5,447,553 was due on ECG's loans (instead of $11,395,457 as of May 1997).
 
 II
 ECG's Authorization to Bring Suit
 
 7
 Defendants argue that ECG was not properly authorized to sue defendants. Defendant Avalli first challenged ECG's authorization to sue in a motion in limine filed on May 6, 1997, over eight months after filing his answer. The district court denied the motion "without prejudice to its renewal after the introduction and consideration of evidence concerning who is and who is not party to the purported partnership agreement." Avalli raised the same issue again at the close of the plaintiffs' case in chief in a Rule 50(a) motion for judgment as a matter of law. The district court denied the motion because it was untimely and "should have been determined before this case came for trial."[2] After the jury rendered its verdict, Avalli renewed the motion for a judgment as a matter of law under Rule 50(b). The court also denied that motion because it was untimely. Defendants then appealed the judgment entered against them.
 
 
 8
 We decline to review directly the district court's denial of the motion in limine.[3] An appellate court will not review a denial of summary judgment after there has been a trial on the merits and an adverse jury verdict. At that stage, the propriety of the district court's denial of the summary judgment motion is an "academic question." See General Signal Corp. v. MCI Telecomms. Corp., 66 F.3d 1500, 1506 (9th Cir. 1995); Lum v. City & County of Honolulu, 963 F.2d 1167, 1169 (9th Cir. 1992); Lamas v. Borras, 16 F.3d 473, 477 n.5 (1st Cir. 1994) (collecting cases). We see no reason to treat any differently the denial of defendants' motion in limine to dismiss for lack of authority to sue.[4]
 
 
 9
 Even if we were to review the denial of the motion in limine directly, we would agree with the district court that defendants waived any objection to plaintiffs authorization to sue. A defendant must challenge a plaintiff's authority to sue by making a "specific negative averment." See FED. R. CIV. P. 9(a). Case law in this circuit states that the "specific negative averment" must be made "in the responsive pleading or by motion before pleading." Summers v. Interstate Tractor & Equip. Co., 466 F.2d 42, 49-50 (9th Cir. 1972) . Other authorities support this rule:
 
 
 10
 [A]lthough an objection to a party's capacity is not an affirmative defense, it can be analogized to an affirmative defense and treated as waived if not asserted by motion or responsive pleading, subject, of course, to the liberal amendment policy of Rule 15. Early waiver is necessary to give meaning to the requirement in Rule 9(a) that capacity must be put in issue by a "specific negative averment."
 
 
 11
 5 Wright & Miller, FED. PRAC. & PROC. CIV. 2dS 1295; see also Wagner Furniture Interiors, Inc. v. Kemner's Georgetown Manor, Inc., 929 F.2d 343, 345 (7th Cir. 1991) (holding that averment was untimely because it was raised in a motion to dismiss at the final pre-trial conference); MTO Maritime Transp. Overseas, Inc. v. McLendon Forwarding Co., 837 F.2d 215, 218 (5th Cir. 1988) (finding that the capacity issue was waived because the defendant did not raise it "until the eve of trial in the Joint Pre-Trial Order").
 
 
 12
 Similarly, if the motion in limine is construed as a motion to amend the pleadings, the district court did not abuse its discretion in denying it as untimely. While "leave [to amend a pleading] shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), a district court may deny the motion if it will cause unfair delay. See Parker v. Joe Lujan Enterprises, 848 F.2d 118, 121 (9th Cir. 1988); McGlinchy v. Shell Chem. Co., 845 F.2d 802, 809 (9th Cir. 1988). "Where the party seeking amendment knows or should know of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend may be denied." Jordan v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir.), vacated on other grounds, 459 U.S. 810 (1982), on remand, 713 F.2d 503 (9th Cir. 1983), opinion amended, 726 F.2d 1366 (9th Cir. 1984).
 
 
 13
 Defendants did not raise the authority to sue issue until one week before the trial was scheduled to begin. None of defendants made a "specific negative averment " in their answers, moved to amend their answers, or filed a motion for summary judgment on this issue. Nor was the authority to sue issue among the disputed factual issues listed in the Joint Pretrial Conference Statement filed with the court on April 21, 1997. Defendants seek to excuse their failure to raise the authority issue in a timely fashion by asserting that they obtained the relevant documents only two weeks prior to the in limine motion. Yet Avalli's counsel received the Partnership Agreement on February 28, 1997, but did not review it until May 7, 1997. According to defendants, the Partnership Agreement is the key document that establishes that Avalli's approval was necessary for ECG to bring suit. Moreover, defendants' attempt to shift blame to plaintiffs for not producing the documents earlier is unpersuasive because defendant never made a formal request for the documents under Rule 34.
 
 III
 Degnan's Opinion Testimony
 
 14
 Defendants argue that the district court erred in admitting opinion testimony by plaintiffs' expert Stephen Degnan regarding the amount ECG owed BanRural on the defaulted loans. At trial, defendants objected to Degnan's reliance on the BanRural loan agreements and promissory notes because they were not reliable. Defendants renewed the objection in a motion to strike. The district court denied the motion to strike, stating that "these documents have some indicia of reliability for what they purport to be."
 
 
 15
 We review a trial court's decision to admit or exclude expert testimony for an abuse of discretion. Desrosiers v. Flight Int'l of Florida, Inc., 156 F.3d 952, 960 (9th Cir.), cert denied, 119 S. Ct. 634 (1998); see also Gilbrook v. City of Westminster, 177 F.3d 839, 858 (9th Cir. 1999) (holding that an appellate court reviews evidentiary rulings for abuse of discretion). We may not reverse the trial court's ruling unless it is "manifestly erroneous." See Desrosiers, 159 F.3d at 960; General Elec. Co. v. Joiner, 522 U.S. 136 (1997). An expert witness may base his or her opinion on facts or data "of a type reasonably relied upon by experts in the particular field." FED. R. EVID. 703. It is common sense that certified public accountants reasonably rely on loan agreements to calculate the interest due on loans. Defendants make no argument as to why it was unreasonable for Degnan to rely on loan agreements and promissory notes. Accordingly, we find that the district court's ruling that the bank loan documents were reliable was not "manifestly erroneous."
 
 
 16
 Defendants do make a variety of arguments about Degnan's qualifications to interpret loan agreements, Degnan's assumptions about the interest rate, and the general accuracy of Degnan's testimony. Defendants did not object to Degnan's testimony at trial on any of these grounds, and therefore they cannot raise these objections on appeal.[5] See Masayesva v. Hale, 118 F.3d 1371, 1379 (9th Cir. 1997), cert. denied sub nom., Hale v. Secakuku, 118 S. Ct. 1048 (1998) (failure to make a specific evidentiary objection waives the right to assign error on appeal); FED. R. EVID. 103(a)(1). Moreover, if defendants disagreed with Degnan's testimony at trial, they could have attempted to cast doubt on it by cross-examining Degnan and presenting their own evidence of the amount of interest due.
 
 IV
 Rule 59 Motion
 
 17
 Defendants argue that they are entitled to a new trial under Rule 59 because the evidence presented to the jury was insufficient to sustain the damage award. We review a district court's denial of a motion for a new trial for an abuse of discretion. See Browning-Ferris Indus. v. Kelco Disposal, Inc., 492 U.S. 257, 278 (1989); Marcy v. Delta Airlines, 166 F.3d 1279, 1282 (9th Cir. 1999). As defendants concede, to rule in defendants' favor, we must find both that there was insufficient evidence for a jury to find that ECG owed over $11 million to BanRural and that there was insufficient evidence for a jury to find that plaintiffs suffered over $15 million in lost profits. Defendants failed to prove that Degnan's testimony as to the amount of liability in the loan agreements was inaccurate or inadmissible. Plaintiffs also presented testimony that BanRural had a viable cause of action under Mexican law against plaintiffs. Thus, we find that the district court did not abuse its discretion in denying defendants' Rule 59 motion.
 
 V
 Rule 60(b)(3) Motion
 
 18
 Defendants' final argument is that the district court erred in denying a Rule 60(b)(3) motion for relief from judgment based on plaintiffs' failure to produce evidence during discovery and their introduction of false testimony at trial. Rule 60(b)(3) permits a losing party to move for relief from judgment on the basis of "fraud, . . . misrepresentation, or other misconduct of an adverse party." FED . R. CIV. P. 60(b)(3). To prevail, the moving party must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense. See Lafarge Conseils et Etudes, S.A. v. Kaiser Cement & Gypsum Corp., 791 F.2d 1334, 1338 (9th Cir. 1986); Jones v. Aero/Chem Corp., 921 F.2d 875, 878-79 (9th Cir. 1990). Rule 60(b)(3) "is aimed at judgments which were unfairly obtained, not at those which are factually incorrect." In re M/V Peacock , 809 F.2d 1403, 1405 (9th Cir. 1987). The district court denied defendants' Rule 60(b)(3) motion because it found that the plaintiffs did not engage in misconduct and the judgment was not unfairly procured. We review the district court's denial of a Rule 60(b) motion for an abuse of discretion and will reverse "only upon a clear showing of abuse of discretion." Molloy v. Wilson, 878 F.2d 313 (9th Cir. 1989); see also Wilson v. San Jose, 111 F.3d 688, 691 (9th Cir. 1997); In re M/V Peacock , 809 F.2d at1404.
 
 
 19
 Defendants contend that plaintiffs engaged in discovery misconduct by not disclosing (1) the pleadings in their litigation with BanRural in a Mexican court; (2) that a Mexican court dismissed the BanRural suit three months before the trial began in this case; and (3) ECG's accounting records. Under Rule 26, litigants are required to provide, without being specifically requested to do so, "a copy of, or a description by category and location of, alldocuments . . . in the possession, custody, or control of the party that are relevant to the disputed facts alleged with particularity in the pleadings," and "the documents . . . on which computation [of damages] is based," FED. R. CIV. P. 26(a)(1)(B)-(C). However, the factual allegations in the complaint relied on by the defendants[6] do not satisfy the "alleged with particularity" requirement of Rule 26. Further, the defendant's document requests made under Rule 34 do not specifically refer to litigation between BanRural and De Saracho.[7] While the allegations and document requests might be interpreted as requiring disclosure of the pleadings insofar as they involve plaintiffs' liability to BanRural, the district court found that defendants fell short of proving by clear and convincing evidence that plaintiffs engaged in misconduct. In addition, the district court found that defendants did not prove by clear and convincing evidence that the Mexican court actually dismissed the action. Plaintiffs presented evidence in response to the Rule 60(b) motion that, under Mexican law, an interlocutory ruling does not terminate the litigation and that the ruling was reversed on appeal. With respect to ECG's accounting records, the district court found that plaintiffs did not have actual or constructive possession of the records, that there was no evidence that plaintiffs had access to computer records containing this information, and that there was no evidence that plaintiffs knew Avalli's check was worthless when they created those records. See Jones, 921 F.2d at 879 (stating that a party may prevail on a Rule 60 motion by showing, inter alia, that the nonmoving party "knew, or was charged with knowledge, of the missing document, and had constructive (if not actual) possession of it"). These factual findings were not clearly erroneous and as a result, the district court did not abuse its discretion in concluding that Rule 60(b)(3) relief was not warranted on the basis of discovery misconduct.
 
 
 20
 Second, defendants argue that plaintiffs introduced false testimony that ECG is indebted to BanRural for more than $11 million. To support this contention, defendants point to new evidence, not presented at trial, purportedly proving that the interest rate provision in the loan documents on which Degnan relied was a mistake and that BanRural actually intended to charge a lower interest rate. The district court held that defendants failed to prove by clear and convincing evidence that "BanRural ever informed [plaintiffs ] of its election to accrue interest at a rate never agreed upon by the parties and never the subject of any modification of the loan documents." Defendants present no evidence that plaintiffs knew that BanRural did not intend to charge the interest rate set out in the loan documents. Thus, we find that the district court did not abuse its discretion in ruling that Rule 60 relief was not warranted for this reason.
 
 VI
 
 21
 We affirm the district court's denial of defendants' motion in limine seeking dismissal on the ground that plaintiff ECG's lacked authorization to bring suit, motion to strike the testimony of plaintiffs' expert witness, Rule 59 motion for a new trial, and Rule 60(b) motion for relief from judgment.
 
 
 22
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The Honorable Myron Bright, Circuit Judge for the Eight Circuit Court of Appeals, sitting by designation.
 
 
 [2]
 A reasonable interpretation of this ruling is that upon hearing the Rule 50(a) motion, the district court concluded that it should have denied defendants' motion in limine because defendant did not raise the authority to sue issue until the eve of trial.
 
 
 [3]
 Defendants do not appeal the district court's denial of their Rule 50(a)and (b) motions for judgment as a matter of law. In any event, the district court properly denied the Rule 50(b) motion because defendants did not make a Rule 50(a) motion at the close of all evidence. "[T]he requirement that the motion be made at the close of all evidence is to be strictly observed." Patel v. Penman, 103 F.3d 868, 878 (9th Cir. 1996) (quoting Farley Transp. Co., Inc. v. Santa Fe Trail Transp. Co., 786 F.2d 1342,1345 (9th Cir. 1986)). Moreover, this court may only review the denial of a Rule 50(a) motion under the stringent plain error standard. See Kreines v. United States, 959 F.2d 834, 836 (9th Cir. 1992); Los Angeles Police Protective League v. Gates, 907 F.2d 879, 883 (9th Cir. 1990).
 
 
 [4]
 Defendants cast their authority to sue argument as a challenge to plaintiffs' standing to sue. Subject matter jurisdiction cannot be waived and may be raised at any time. See United States v. Hayes, 515 U.S. 737, 742 (1995). Even if defendants are correct that ECG lacked authorization to sue, this court does not lack subject matter jurisdiction in the sense that it would if plaintiffs lacked standing to sue under the "case or controversy" requirement of Article III of the Constitution. "The question of a litigant's capacity or right to sue or to be sued generally does not affect the subject matter jurisdiction of the district court." Summers v. Interstate Tractor & Equip. Co., 466 F.2d 42, 50 (9th Cir. 1972).
 
 
 [5]
 Defendants could possibly have challenged the accuracy of Degnan's testimony through a relevance objection. See Bradley v. Armstrong Rubber Co., 130 F.3d 168, 177 (5th Cir. 1997) ("Even if rule 703 will not require the exclusion of such an unfounded opinion, general principles of relevance will. In other words, an opinion based totally on incorrect facts will not speak to the case at hand and hence will be irrelevant.").
 It is not clear, however, that Degnan's testimony was inaccurate, as plaintiffs contend. Degnan testified that he calculated the interest due by selecting the higher of two rates and multiplying the higher rate by 1.5. The loan agreement states:
 If for any reason "THE BORROWER" should fail to pay the required sums to "THE LENDER" in a timely manner, it shall pay to "THE LENDER" default interest on the unpaid balance, equivalent to 1.5 times the yield announced by the Banco de Mexico for the primary issue of 28-day CETES (Treasury Dis count Securities) or the C.P.P. (Average Cost of Funds Rate), whichever is higher as of the date when the default interest begins accruing.
 Defendants argue that this testimony was inaccurate because various notices from BanRural, introduced into evidence at trial, stated that the bank was charging a lower interest rate. Any inconsistency between the default notices and the agreements presented a question of fact for the jury. Thus, the cases cited by defendants for the general proposition that a court must exclude inaccurate expert testimony, even if it is not objected to at trial, are off point because defendants have not shown that Degnan's testimony was inaccurate.
 
 
 [6]
 Defendants rely on paragraphs of the complaint that allege plaintiffs' liability on the BanRural loans and the diminution in the value of Maria De Saracho's land resulting from ECG's default.
 
 
 [7]
 Defendants requested "[a]ll documents which reflect monies borrowed to finance purchase of machinery and equipment for the Culiacan plant which is the subject of plaintiffs' complaint," and "[a]ny and all documents which show, evidence, or relate to monies borrowed by plaintiff for use as operating capital including start-up costs related to the plaintiff's plant which is the subject of plaintiff's complaint on file herein."
 BRIGHT, Circuit Judge, dissenting:
 In this case, the Plaintiffs recovered a verdict of 12.5 million dollars. Included in the damage calculation was testimony of the Plaintiffs' expert, Stephen Degnan, who calculated that the Plaintiffs owed BanRural approximately 11.4 million dollars. Over objection, the trial court admitted this evidence that the jury could use in measuring the Plaintiffs' damages.
 It is now known that BanRural's claim, calculated six months after trial, does not exceed 5.5 million dollars. In my view, one does not prove a bank debt such as this one by having an expert witness testify as to the estimated amount of the loan. A bank's debtor should either testify as to the amount of the bank's demand or produce evidence from the bank of the amount of the debt. Neither was done here.
 The trial court improperly admitted the expert testimony establishing an inflated bank debt that produced a windfall for the Plaintiffs' damages. Expert testimony based on incorrect underlying facts should be excluded. See United States v. City of Miami, 115 F.3d 870, 873 (11th Cir. 1997); see also Bradley v. Armstrong Rubber Co., 130 F.3d 168, 177 (5th Cir. 1997).
 I would grant the Defendant a new trial on damages unless the Plaintiffs would, by remittitur, accept an award reducing the jury award of damages by 2.5 million dollars.