**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AFFORDABLE HOUSING DEVELOPMENT
CORPORATION, a California
corporation; ASHWOOD
CONSTRUCTION, a California
corporation,
                    *Plaintiffs-Appellants,*

                    v.

CITY OF FRESNO, a municipal
corporation; CITY OF FRESNO CITY
COUNCIL OF THE CITY OF FRESNO,
CALIFORNIA; CHRIS MATHYS,
Council Member, sued in his
official and personal capacity; SAL
QUINTERO, sued in his official and
personal capacity; GARRY
BREDEFELD, Council Member, sued
in his official and personal
capacity; HENRY PEREA, Council
Member, sued in his official and
personal capacity; DANIEL
RONQUILLO, sued in his official and
personal capacity; TODD TOLBERT,
an individual; STEPHEN V. HENSON,
an individual; SHARON L. HENSON,

No. 04-15625

D.C. No.
CV-97-05498-OWW

an individual; HERNAND J. KOUBRATOFF, an individual; LAURA A. MATHER, an individual; TRAVIS L. COMPTON, an individual; VERNON R. WOOLEY, an individual; ORIE REED, an individual; BARNELL CALDWELL, an individual; DIANE R. DANIELS, an individual; RICHARD ROBERTSON, an individual; JANET REID-BILLS, an individual,
                    *Defendants-Appellees.*

AFFORDABLE HOUSING DEVELOPMENT CORPORATION; ASHWOOD CONSTRUCTION, a California corporation,

*Plaintiffs-Appellants,*

v.

CITY OF FRESNO; CITY COUNCIL OF THE CITY OF FRESNO, CALIFORNIA; SAL QUINTERO; GARRY BREDEFELD; HENRY PEREA; DANIEL RONQUILLO; TODD TOLBERT; STEPHEN V. HENSON; SHARON L. HENSON; HERNAND J. KOUBRATOFF; LAURA A. MATHER; TRAVIS L. COMPTON; VERNON R. WOOLEY; ORIE REED; BARNELL CALDWELL; DIANE R. DANIELS; RICHARD ROBERTSON; JANET REID-BILLS,

*Defendants,*

and

CHRIS MATHYS, Councilmember, sued in his official and personal capacity,

*Defendant-Appellee.*

No. 04-15644

D.C. No.
CV-97-05498-OWW

AFFORDABLE HOUSING DEVELOPMENT CORPORATION, a California corporation; ASHWOOD CONSTRUCTION, a California corporation,

*Plaintiffs-Appellants,*

v.

CITY OF FRESNO, a municipal corporation; CITY OF FRESNO CITY COUNCIL OF THE CITY OF FRESNO, CALIFORNIA; CHRIS MATHYS, Council Member, sued in his official and personal capacity; SAL QUINTERO, sued in his official and personal capacity; GARRY BREDEFELD, Council Member, sued in his official and personal capacity; HENRY PEREA, Council Member, sued in his official and personal capacity; DANIEL RONQUILLO, sued in his official and personal capacity; TODD TOLBERT, an individual; STEPHEN V. HENSON, an individual; SHARON L. HENSON,

No. 04-15650

D.C. No.
CV-97-05498-OWW

an individual; HERNAND J.
KOUBRATOFF, an individual; LAURA
A. MATHER, an individual; VERNON
R. WOOLEY, an individual; ORIE
REED, an individual; BARNELL
CALDWELL, an individual; DIANE R.
DANIELS, an individual; RICHARD
ROBERTSON, an individual; JANET
REID-BILLS, an individual,

*Defendants,*

and

TRAVIS L. COMPTON, an individual,

*Defendant-Appellee.*

AFFORDABLE HOUSING DEVELOPMENT
CORPORATION, a California
corporation; ASHWOOD
CONSTRUCTION, a California
corporation,

        *Plaintiffs-Appellees,*

        v.

CITY OF FRESNO, a municipal
corporation; CITY OF FRESNO CITY
COUNCIL OF THE CITY OF FRESNO,
CALIFORNIA; CHRIS MATHYS,
Council Member, sued in his
official and personal capacity; SAL
QUINTERO, sued in his official and
personal capacity; GARRY
BREDEFELD, Council Member, sued
in his official and personal
capacity; HENRY PEREA, Council
Member, sued in his official and
personal capacity; DANIEL
RONQUILLO, sued in his official and
personal capacity; TRAVIS L.
COMPTON, an individual,

        *Defendants,*

    and

No. 04-15683

D.C. No.
CV-97-05498-OWW

TODD TOLBERT, an individual;
STEPHEN V. HENSON, an individual;
SHARON L. HENSON, an individual;
HERNAND J. KOUBRATOFF, an
individual; LAURA A. MATHER, an
individual; VERNON R. WOOLEY, an
individual; ORIE REED, an
individual; BARNELL CALDWELL, an
individual; DIANE R. DANIELS, an
individual; RICHARD ROBERTSON, an
individual; JANET REID-BILLS, an
individual,
         *Defendants-Appellants.*

AFFORDABLE HOUSING DEVELOPMENT CORPORATION, a California corporation; ASHWOOD CONSTRUCTION, a California corporation,

_Plaintiffs-Appellees,_

v.

CITY OF FRESNO, a municipal corporation,

_Defendant-Appellant,_

and

CITY OF FRESNO CITY COUNCIL OF THE CITY OF FRESNO, CALIFORNIA; CHRIS MATHYS, Council Member, sued in his official and personal capacity; SAL QUINTERO, sued in his official and personal capacity; GARRY BREDEFELD, Council Member, sued in his official and personal capacity; HENRY PEREA, Council Member, sued in his official and personal capacity; DANIEL RONQUILLO, sued in his official and personal capacity; TODD TOLBERT, an individual; STEPHEN V. HENSON, an individual; SHARON L. HENSON,

No. 04-15693

D.C. No.
CV-97-05498-OWW

an individual; HERNAND J. KOUBRATOFF, an individual; LAURA A. MATHER, an individual; TRAVIS L. COMPTON, an individual; VERNON R. WOOLEY, an individual; ORIE REED, an individual; BARNELL CALDWELL, an individual; DIANE R. DANIELS, an individual; RICHARD ROBERTSON, an individual; JANET REID-BILLS, an individual,

*Defendants.*

AFFORDABLE HOUSING DEVELOPMENT
CORPORATION, a California
corporation; ASHWOOD
CONSTRUCTION, a California
corporation,

*Plaintiffs-Appellees,*

v.

CITY OF FRESNO, a municipal
corporation; CITY OF FRESNO CITY
COUNCIL OF THE CITY OF FRESNO,
CALIFORNIA; SAL QUINTERO, sued in
his official and personal capacity;
GARRY BREDEFELD, Council
Member, sued in his official and
personal capacity; HENRY PEREA,
Council Member, sued in his
official and personal capacity;
DANIEL RONQUILLO, sued in his
official and personal capacity;
TODD TOLBERT, an individual;
STEPHEN V. HENSON, an individual;
SHARON L. HENSON,

No. 04-15753

D.C. No.
CV-97-05498-OWW

an individual; HERNAND J. KOUBRATOFF, an individual; LAURA A. MATHER, an individual; TRAVIS L. COMPTON, an individual; VERNON R. WOOLEY, an individual; ORIE REED, an individual; BARNELL CALDWELL, an individual; DIANE R. DANIELS, an individual; RICHARD ROBERTSON, an individual; JANET REID-BILLS, an individual,

*Defendants,*

and

CHRIS MATHYS, Council Member, sued in his official and personal capacity,

*Defendant-Appellant.*

AFFORDABLE HOUSING DEVELOPMENT CORPORATION, a California corporation; ASHWOOD CONSTRUCTION, a California corporation,

*Plaintiffs-Appellees,*

v.

CITY OF FRESNO, a municipal corporation; CITY OF FRESNO CITY COUNCIL OF THE CITY OF FRESNO, CALIFORNIA; CHRIS MATHYS, Council Member, sued in his official and personal capacity; SAL QUINTERO, sued in his official and personal capacity; GARRY BREDEFELD, Council Member, sued in his official and personal capacity; HENRY PEREA, Council Member, sued in his official and personal capacity; DANIEL RONQUILLO, sued in his official and personal capacity; STEPHEN V. HENSON, an individual; SHARON L. HENSON, an individual; HERNAND J. KOUBRATOFF, an individual; VERNON R. WOOLEY, an individual; RICHARD ROBERTSON, an individual,

*Defendants,*

and

TRAVIS L. COMPTON, an individual,

*Defendant-Appellant.*

No. 04-15780

D.C. No.
CV-97-05498-
OWW/SMS

AFFORDABLE HOUSING DEVELOPMENT
CORPORATION, a California
corporation; ASHWOOD
CONSTRUCTION, a California
corporation,

> *Plaintiffs-Appellees,*

> v.

CITY OF FRESNO, a municipal
corporation,

> *Defendant-Appellant,*

> and

CITY OF FRESNO CITY
COUNCIL OF THE CITY OF FRESNO,
CALIFORNIA; CHRIS MATHYS,
Council Member, sued in his
official and personal capacity; SAL
QUINTERO, sued in his official and
personal capacity; GARRY
BREDEFELD, Council Member, sued
in his official and personal
capacity; HENRY PEREA, Council
Member, sued in his official and
personal capacity; DANIEL
RONQUILLO, sued in his official and
personal capacity; TODD TOLBERT,
an individual; STEPHEN V. HENSON,
an individual; SHARON L. HENSON,

No. 04-17130

D.C. No.
CV-97-05498-OWW

an individual; HERNAND J. KOUBRATOFF, an individual; LAURA A. MATHER, an individual; TRAVIS L. COMPTON, an individual; VERNON R. WOOLEY, an individual; ORIE REED, an individual; BARNELL CALDWELL, an individual; DIANE R. DANIELS, an individual; RICHARD ROBERTSON, an individual; JANET REID-BILLS, an individual,

*Defendants.*

AFFORDABLE HOUSING DEVELOPMENT
CORPORATION, a California
corporation; ASHWOOD
CONSTRUCTION, a California
corporation,

*Plaintiffs-Appellants,*

v.

CITY OF FRESNO, a municipal
corporation; CITY OF FRESNO CITY
COUNCIL OF THE CITY OF FRESNO,
CALIFORNIA; CHRIS MATHYS,
Council Member, sued in his
official and personal capacity; SAL
QUINTERO, sued in his official and
personal capacity; GARRY
BREDEFELD, Council Member, sued
in his official and personal
capacity; HENRY PEREA, Council
Member, sued in his official and
personal capacity; DANIEL
RONQUILLO, sued in his official and
personal capacity; TODD TOLBERT,
an individual; STEPHEN V. HENSON,
an individual; SHARON L. HENSON,

No. 05-15104

D.C. No.
CV-97-05498-OWW

OPINION

an individual; HERNAND J.
KOUBRATOFF, an individual; LAURA
A. MATHER, an individual; TRAVIS
L. COMPTON, an individual;
VERNON R. WOOLEY, an individual;
ORIE REED, an individual; BARNELL
CALDWELL, an individual; DIANE R.
DANIELS, an individual; RICHARD
ROBERTSON, an individual; JANET
REID-BILLS, an individual,
                    *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of California
Oliver W. Wanger, District Judge, Presiding

Argued and Submitted
November 16, 2005—San Francisco, California

Filed January 11, 2006

Before: John T. Noonan, Pamela Ann Rymer, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Noonan

## COUNSEL

William J. Davis, Los Angeles, California, for plaintiffs-appellants/appellees Affordable Housing Development Corporation, et al.

Douglas T. Sloan, Fresno, California, for defendants-appellees/appellants City of Fresno.

Nancy A. Jenner, Visalia, California, for defendant-appellee/appellant Chris Mathys.

Howard A. Sagaser, Fresno, California, for defendant-appellee/appellant Citizens.

Bruce Berger, Fresno, California, for defendant-appellee/appellant Travis L. Compton.

## OPINION

NOONAN, Circuit Judge:

Affordable Housing Development Corporation and its affiliate Ashwood Construction Co. (collectively AHDC) appeal the judgment of the district court, following a jury trial, in favor of defendants City of Fresno (the City) and individual council members and citizens. Holding that the district court properly reconciled the special verdicts of the jury, we affirm the judgment. Holding that there should be further consideration of the citizens' claims for attorney fees, we remand that issue to the district court.

FACTS

In October 1996, AHDC agreed with McCaffrey Development to buy property in the northeast corner of the City. AHDC planned to build low-rent family housing in an apartment complex of 324 units to be known as Wellington Place. Construction financing was secured through a commitment from the Federal National Mortgage Association that included the Wellington Place project along with three other AHDC enterprises. AHDC entered into a $12.7 million construction contract with its affiliate, Ashwood Construction. AHDC expected permanent financing to be in the form of a federally-sponsored $30 million bond issue. "Equity" was found in a reservation of ten years of federal tax credits at over $900,000 per year. These credits were saleable. On February 24, 1997, AHDC arranged to sell them to Related Capital Company for 71 cents per dollar of credit for a total of $6,107,808; with the sale, Related Capital Company acquired a 99.98% limited partnership in the project.

As of March 1997, six months after its deal with McCaffrey Development, AHDC had expended less than $1/2 million. It possessed a project that its damages expert estimated would yield almost $1/2 million to its affiliate Ashwood and a housing project that AHDC had arranged to sell for over $6 million. But at least one more thing was needed.

That necessary thing was the approval of the Fresno City Council. The approval was required by federal law — the Tax Equity and Fiscal Responsibility Act, 26 U.S.C. § 147(f) (TEFRA) — for the $30 million in tax-exempt bonds that would be needed to finance the project. TEFRA sets conditions for the issue of what the statute described as "private activity bonds," which might be issued to finance a variety of projects identified by law. TEFRA includes these provisions:

> **(f)   Public approval required for private activity bonds. —**

**(1) In general.**—A private activity bond shall not be a qualified bond unless such bond satisfies the requirement of paragraph (2).

**(2) Public approval requirement.—**

**(A) In general.**—A bond shall satisfy the requirements of this paragraph if such bond is issued as a part of an issue which has been approved by—

**(i)** the government unit —

**(I)** which issued such bond, or

**(II)** on behalf of which such bond was issued, and

**(ii)** each governmental unit having jurisdiction over the area in which any facility, with respect to which financing is to be provided from the net proceeds of such issue, is located (except that if more than 1 governmental unit within a State has jurisdiction over the entire area within such State in which such facility is located, only 1 such unit need approve such issue).

**(B) Approval by a governmental unit.**—For purposes of subparagraph (A), an issue shall be treated as having been approved by an governmental unit if such issue is approved—

**(i)** by the applicable elected representative of such governmental unit after a public hearing following reasonable public notice, or

**(ii)** by voter referendum of such governmental unit.

26 U.S.C. § 147(f).

The city council was the body whose approval was necessary under TEFRA. Vigorous opposition to approval by the council was expressed at neighborhood meetings held by Councilmember Chris Mathys and at an overflow hearing conducted by the council before the vote on approval. Persons of various races, ethnicities, and family size expressed concern over the impact of a large rental unit on nearby single family homes. Councilmembers doubted the need for new rental units in Fresno. On March 25, 1997, the council voted, 5-2, to deny approval of the bonds.

## PROCEEDINGS

On May 13, 1997, AHDC filed its first complaint in this suit. A second amended complaint was filed on March 15, 1999 and is the operative complaint in this action. The introduction to this complaint charged Councilman Mathys and the City with "vicious, old-fashioned rabble-rousing." The defendants were the City; Mathys and the four other members of the council who had voted against approval; a Neighborhood Action Committee; Travis L. Compton by himself; Todd Tolbert, Stephen V. Henson, Sharon L. Henson, Hernand S. Koubratoff, Laura A. Mather, Vernon R. Wooley, Orie Reed, Barnell Caldwell, Diane R. Daniels, Richard Robertson, Janet Reid-Bills (collectively "citizen defendants"); and, Does 1 through 500. The complaint alleged that in refusing to authorize the bonds the City had discriminated on account of disabilities, family size, ethnicity or race in violation of the Fair Housing Act, 42 U.S.C. §§ 3601-17; the California Fair Employment and Housing Act, Cal. Gov't Code § 12955 *et seq.*; the Americans with Disabilities Act, 42 U.S.C. §§ 12131-33; and the Civil Rights Laws, 42 U.S.C. §§ 1982, 1983 and 1985(3); that the five councilmembers had aided the City's unlawful act "by trading their votes"; and that the citizen defendants "did threaten, intimidate and interfere" with AHDC's rights and conspired to do so. Additional claims

were advanced against the citizens. It was alleged that they were aware of the Wellington neighbors' "covenant not to object or oppose the development of multi-family housing at the Wellington site" and that they and the Neighborhood Action Committee had tortiously induced these neighbors to breach "their written covenants"; had intentionally interfered with these contracts; and, as a number of citizen defendants themselves had signed the contracts, had broken their own contracts with McCaffrey Development or, apparently in the alternative, had fraudulently entered into these contracts. As a result of the defendants' conduct jointly and severally, AHDC said that it had suffered damages of $9 million. AHDC demanded a jury trial.

On August 31, 2000, the district court granted summary judgment to the citizen defendants on several of the claims asserted against them. The neighbors' agreements with McCaffrey Development, characterized by AHDC as covenants, ran as follows:

> [Buyer's] signature below shall constitute [buyer's] acknowledgment of, and agreement with Developer's intent to seek the [specified] zoning . . . and hereby agrees to waive any protest of Developer obtaining future entitlements.

The citizen defendants who had signed such agreements with McCaffrey Development submitted evidence (in the form of declarations and deposition testimony) establishing that they understood their agreements to be only with McCaffrey Development and only a waiver of any protest as to zoning. Robert McCaffrey himself submitted a deposition that the agreements referred only to zoning. AHDC argued that the agreements were "estoppel certificates" waiving any right to protest any future development. The court characterized the agreements as "adhesion contracts" and ruled that, as a non-party to the agreements, AHDC's interpretation was irrelevant. The district court concluded that there was a meeting of

the minds of the contracting parties that the provision applies only to zoning. Summary judgment was granted the citizens on the claims based on the agreements. The claim of fraud fell with this ruling.

The court also ruled on AHDC's claim that the citizens had conspired to violate its civil rights. AHDC, the court found, had no standing to sue under 42 U.S.C. § 1985(3), because it was not a member of a suspect class and could not vicariously advance a claim under the statute. On other claims, the court denied summary judgment to some or all of the citizens. But on November 9, 2001, the court granted summary judgment on all remaining claims. The citizens could not be held liable for exercising their First Amendment right of free speech. The court also found that AHDC had produced no evidence linking any individual defendant to hostile comments made to AHDC's representatives at a public meeting (e.g., "I'm going to kick your ass," attributed by AHDC to no speaker in particular but said by AHDC to be "affirmed" by AHDC's opponents). The court held that the actions of the City and Mathys amounted to petitioning the government and so were immune under the *Noerr-Pennington* doctrine. *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965). *See also White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) (*Noerr-Pennington* immunity has been extended beyond the anti-trust context).

On October 17, 2002, the district court reconsidered its ruling on the City's immunity and in light of *Silver Sage Partners v. City of Desert Hot Springs*, 251 F.3d 814 (9th Cir. 2001), denied immunity to the City and denied Mathys *Noerr-Pennington* immunity. In the same order, the district court denied attorney fees to the citizen defendants. The court held that the citizens had not shown AHDC's suit to be "frivolous, unreasonable or without foundation" and that "the legal issues were difficult," involving the balancing of First Amendment rights against rights under the fair-housing laws. The court

added, "Contract claims also were presented," but did not comment on their merit. The court found the citizen defendants' request for attorney fees under Cal. Code Civ. P. § 1021.5 for a defense benefitting the public was "unclear" as to what defense was meant. The court treated at some length the contentions of Travis Compton that AHDC had no evidence against him; the court ruled that he had petitioned the council to vote against the bonds, and the law had been "in flux" so that it was not evident before 2002 that Compton was immune. He, too, was denied fees.

In August 2003, the case went to trial against the City and Mathys. After a trial lasting 15 days, the jury found in favor of Mathys and judgment was entered September 5, 2005. As to the City the jury entered special verdicts as follows:

Question 4: Was TEFRA bond approval for the Wellington Place Development denied by the City of Fresno, despite the fact that the development and Plaintiff AHDC, as managing general partner, were qualified?

Yes __X__   No ____

*INTENTIONAL HOUSING DISCRIMINATION*

Question 5: Was the race, national origin, color, or familial status of persons to whom the Wellington Place [D]evelopment was to be available to rent and occupy, a motivating factor in the decision of a majority of the Fresno City Councilmembers to deny the TEFRA bond issue?

Yes ____   No __X__

*HOUSING DISCRIMINATION INTERFERENCE*

Question 6: Did a majority of the Councilmembers of the City of Fresno purposefully interfere with

any person's exercise or enjoyment of the opportunity for affordable housing, or interfere with other persons who aided or encouraged exercise or enjoyment of that other person's right to affordable housing at the Wellington Place Development, on account of that person's race, national origin, color, or familial status?

Yes _____     No _X_

### DISPARATE IMPACT DISCRIMINATION

Question 9: Did the denial by a majority of the Councilmembers of the City of Fresno of the Wellington Place Development TEFRA bond issue cause a significant adverse or disproportionate impact on persons seeking affordable housing, because of their race, national origin, color, or familial status?

Yes _X_     No _____

### SAME DECISION DEFENSE

Question 10: Do you find that Defendant City of Fresno has proved, by a preponderance of the evidence, that a majority of the members of the City Council of the City of Fresno would have made the same decision, even if the race, national origin, color, or familial status, played no role in the TEFRA bond issue? If you do, either Plaintiff should recover nominal damages of $1.00.

AHDC:     Yes _X_  No _____
Ashwood:  Yes _X_  No _____

### DEFENSE OF LEGITIMATE, NON-DISCRIMINATORY REASONS

Question 11: Do you find that the decision to deny the TEFRA bond issue was based only on legitimate, non-discriminatory reasons?

Yes __X__   No ____

Question 12: Was any housing discrimination by a majority of the Fresno City Councilmembers a cause of damage to either Plaintiff?

AHDC:     Yes ____   No __X__
Ashwood: Yes ____   No __X__

AHDC renewed a Rule 50 motion for judgment against the City as a matter of law. The court invited briefing. AHDC then additionally moved to amend the judgment, alter the jury verdict, reconsider summary judgment, and objected to the court's taxation of costs in favor of Compton and Mathys. On March 9, 2004, AHDC's motions were denied and judgment was entered for the City. In an accompanying opinion the court addressed the question of the jury's special verdicts being inconsistent. It concluded that by failing to persuade the jury that the discrimination caused AHDC any damages, AHDC failed to establish a prima facie element of its claim. It also rejected AHDC's contention that a finding of disparate impact based on the denial of TEFRA bond financing creates strict liability for a municipality. The district court concluded that a legitimate, non-discriminatory motive is a valid defense to disparate impact liability in this context.

AHDC appeals. The City and Mathys cross-appeal the district court's October 17, 2002 denial of summary judgment and denial of costs. The citizens appeal the denial of attorney fees.

## ANALYSIS

*Summary judgment for the citizens.* AHDC appeals the grant of summary judgment to the citizens. AHDC states that the district court's decision not to let AHDC's claim on the adhesion agreements go to trial was because of the citizens' First Amendment right of protest. That is an inadequate and

inaccurate description of the district court's order of August 31, 2000, which was based largely on the irrelevancy of AHDC's interpretation of contracts made between parties other than itself. The district court was correct in this exposition of the law of contracts. Cal. Civil Code § 1649. The parties to the agreements did not dispute their meaning. The agreements did not apply to the financing of a housing project.

The caption for this section of AHDC's brief refers to AHDC suing the citizens for "making threats" and "conspiring." The brief, however, goes on to make no mention of any evidence of threats or of conspiracy. A caption is not an argument. These issues were abandoned as to all citizen defendants except Compton. Fed. R. App. Proc. 28(a)(4); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). As to Compton, the testimony upon which AHDC relies in no way suggests that Compton was a member of a conspiracy or made any threats.

*Legislative Immunity*. AHDC appeals the district court's decision of March 9, 2004, upholding the jury's verdict that Mathys was not subject to liability or damages and denying AHDC's motion for reconsideration of the district court's previous grant of summary judgment on the basis of legislative immunity to all of the councilmembers. AHDC contends that the TEFRA approval decision was not a legislative decision because it involved a specific piece of property, and it did not change any comprehensive, city-wide zoning ordinances or policy. It also argues that legislative immunity cannot shield a vote based on an illegal reason. The City responds that this was a legislative decision because Congress mandated that the city council vote to approve the bond issue.

**[1]** The councilmembers were engaged in legislative action in making the TEFRA decision. The statute makes clear that approval of TEFRA bonds is to be by voter referendum or by elected representative. 26 U.S.C. § 147(f)(2)(B). The federal

focus is on the democratic nature of the approval-granting authority: it is either the electorate as a whole or persons chosen by the electorate. In their actions and votes on the council, the councilmembers were elected representatives acting in a legislative decision affecting a substantial area. In these activities, they were entitled to legislative immunity. *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 476 (9th Cir. 1998). We affirm the district court's decision of March 9, 2004 with respect to legislative immunity. The city councilmembers were plainly shielded from liability because their actions were legislative in nature.

*Additional Claims of Immunity.* The City and Mathys cross-appeal the district court's October 17, 2002 denial of its summary judgment motion on the question of immunity for the City and Mathys. Though the jury ultimately found in its favor, the City's position is that it should not have had to proceed to trial for the TEFRA decision because the City was immune from liability due to the First Amendment and the *Noerr-Pennington* doctrine. Further, Mathys argues that he should not have had to proceed to trial because the district court erred in denying his motion for summary judgment on October 17, 2002, due to the fact that his vote on TEFRA was protected by legislative immunity and his other actions were petitioning activities protected by *Noerr-Pennington* immunity.

We do not reach these questions because we do not review the denial of summary judgment when the case has gone to trial. *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 878 (9th Cir. 2000). As to the City, we review the verdicts and the trial.

As to Mathys on the claim of *Noerr-Pennington* immunity, AHDC argues that the district court erred in upholding the jury verdict in favor of Mathys, but does not specifically argue that the jury erred because Mathys' activities were not protected by *Noerr-Pennington* immunity. This Court "will

not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief," *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992) (quoting *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986)). However, this Court has "discretion to review an issue not raised by appellant . . . . when it is raised in the appellee's brief." *Id.* (quoting *In re Riverside Linden Invest. Co.*, 945 F.2d 320, 324 (9th Cir. 1991)) (alteration in original).

**[2]** Here, we believe that it is imperative to make plain that in addition to the legislative immunity Mathys was afforded for the TEFRA vote, his other activities were protected by the *Noerr-Pennington* doctrine. Mathys made and distributed flyers encouraging his constituents to oppose the Wellington Place project. He urged the executive director of the Fresno Housing Authority to oppose it. He organized a neighborhood meeting in opposition. As the district court found, no evidence was presented that Mathys intimidated anyone or threatened violence to anyone. His activities amounted to petitioning the city council. The activities were protected by the right to petition the government for a redress of grievances, *White v. Lee*, 227 F.3d at 1227-28, and by a government official's right to seek to affect governmental action. *Manistee Town Center v. City of Glendale*, 227 F.3d 1090, 1093 (9th Cir. 2000).

**[3]** *Reconcilation of the special verdicts.* We review de novo a claim that the jury's verdict is inconsistent and decide whether its responses can be harmonized. *Norris v. Sysco Corp.*, 191 F.3d 1043, 1047 (9th Cir. 1999). AHDC argues that the jury verdict that the City's denial of TEFRA bond approval had a disparate impact upon minorities and families with children is dispositive and entitles AHDC to judgment as a matter of law. The City argues that Congress could not have intended for local approval of TEFRA bonds to be automatic but that acceptance of AHDC's argument would have that effect as failure to approve bonds for low-income housing

would in most cities have a disparate impact on a minority. We agree with the City that the federal statute's explicit provisions for a voter referendum or approval by an elected representative indicate that Congress did not intend to make approval automatic or to exclude the play of democratic process in the local decision.

**[4]** To impose absolute liability, without defense, upon a city whose voters or city council decided not to approve TEFRA would frustrate the federal scheme. AHDC argues that California law required the council to approve, but that argument subordinates a uniform national law to local variation. AHDC argues that the discretionary approval authorized by TEFRA is meant to kick in where other private activity bonds are concerned but has no application to housing bonds. Nothing in the statute creates such an exception. For approval of every kind of private activity bond, TEFRA calls, first, for a public hearing, then for a popular vote or a decision by an elected authority. A public hearing would be a sham if any opponent of housing bonds would have to keep silent. There is no point in the statute's requirement if, as in a dictatorship, a referendum could have only one correct outcome. There is no need for the statute to specify that, alternatively, an elected representative is to decide on approval if the task to be performed is the bureaucratic job of determining whether the developer met minimal qualifications.

AHDC still seems not to have grasped what the federal statute demands. Twice in its brief on this appeal, AHDC asserts that Councilman Mathys "maneuvered" the vote on approval so that the vote was taken from the housing authority and committed to the council. The housing authority was not an elected representative of the people of Fresno. Only the people or the elected council had the statutory authority to act for the City in approving or disapproving the bond issue.

AHDC's position is that by proving that the City's decision disparately impacted minorities and families with children, it

established liability for discrimination under the FHA. It made a prima facie showing of discrimination. *See Pfaff*, 88 F.3d. at 745 ("To establish a prima facie case of disparate impact under the FHA, 'a plaintiff must show at least that the defendant's actions had a discriminatory effect.' ") (quoting *Keith v. Volpe*, 858 F.2d 467, 482 (9th Cir. 1988)). A prima facie showing, however, is only the first step in the liability analysis. The next step requires us to examine the availability of any defenses for the City.

Disparate impact doctrine evolved under Title VII as a way to address unintentional harm having profound effects upon protected groups. *See, e.g.*, *Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977, 987 (1988) ("[T]he necessary premise of the disparate impact approach is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination."). Nevertheless, our circuit has not imposed strict liability for disparate impact. *Pfaff* recognized that a defendant may rebut a plaintiff's showing of disparate impact by "supply[ing] a legally sufficient, nondiscriminatory reason." 88 F.3d at 746-747 (noting that "the appropriate standard of rebuttal in [Title VII] disparate impact cases normally requires a compelling business necessity").

The question here is what constitutes a legally sufficient reason for a municipality executing its congressionally mandated duties under TEFRA. While we are mindful of the guidance Title VII often provides in FHA cases, the defense of "business necessity" in the employment discrimination arena does not transpose cleanly into the circumstances present here. *Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 148 (3rd Cir. 1977) (recognizing that importing the defense of "business necessity" from the employment discrimination context to a claim under the Fair Housing Act "is of somewhat uncertain application").

Congress required the city council to hold a public hearing and vote on the TEFRA bond financing approval question.

TEFRA mandates that the city council decide the matter after considering local residents' views, and by clear implication requires the city council to consider city priorities and housing needs, the wisdom of preferential financing for the project, and all manner of other relevant considerations to which elected representatives normally give weight in executing their office. Imposing automatic liability for the exercise of this decision for causing a disparate impact would write the relevant considerations and the discretion out of the legislative duties in the statute. It is nearly impossible for a reviewing court to pass judgment on what considerations were "necessary" to the City's business of good governance and to implement its vision for the future of Fresno.

In *Oti Kaga v. South Dakota Hous. Dev. Auth.*, 342 F.3d 871, 883 (8th Cir. 2003), the Eighth Circuit addressed a difficulty analogous to the one presented here. That court interpreted the business necessity defense in the context of a FHA housing disparate impact claim in which a low-income housing developer sued a state housing development authority over its allocation of federal funds under the National Affordable Housing Act. The court held that the governmental entity could rebut the showing of disparate impact by establishing that its conduct had a "manifest relationship" to the allocation of housing funds in the federal program "and is justifiable on the ground that it is necessary" to that governmental entity's "exercise of its funding responsibilities." *Id.* This approach is sound.

It is also in accord with the standards other circuits have developed for the defense available to municipalities for disparate impact claims under the Fair Housing Act. *See Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 936 (2d Cir. 1988), *aff'd in part*, 488 U.S. 15 (1988) (per curiam) (recognizing the defense of "a legitimate, bona fide governmental interest"); *Resident Advisory Bd. v. Rizzo*, 564 F.2d at 149 (same); *Langlois v. Abington Hous. Auth.*, 207 F.3d 43, 51 (1st Cir. 2000) (holding that there must be "a

legitimate and substantial goal of the measure in question"). In the TEFRA context, a municipality may rebut a showing of disparate impact by demonstrating that its reasons for denying TEFRA bond approval were related to the exercise of the discretion conferred by Congress. It must show that it had a nondiscriminatory, "legitimate, bona fide governmental interest."

We need not and do not decide what other defenses exist to a claim of disparate impact or whether such a showing by a defendant shifts the burden back to the plaintiff to show that no alternative would serve that interest with less discriminatory effect. The City here was called upon to make an up or down vote on a single housing proposal. There were no alternatives at issue.

**[5]** We hold only in this case of first impression under TEFRA that if an elected representative authority declines to approve TEFRA housing bonds for a legitimate non-discriminatory reason, the defense is good. A governmental interest in not giving approval may outweigh the desirability of furnishing low-rent housing.

**[6]** A decision motivated by hostility to race, ethnicity or family size would have been illegal under California law. The jury found that the City's decision was not so motivated. Under TEFRA, the City had discretion to deny approval for a "legitimate nondiscriminatory reason." The jury found that the City had such reasons. Evidence before the jury showed that Wellington Place was opposed on account of the impact of a large rental unit on neighboring property values and because of an arguable lack of need for the project. AHDC did not demonstrate that these reasons were a sham or were pretextual. The response by the jury establishes a defense to disparate impact.

The special verdicts approved by the district court instructed the jury that as to question 11, the jury was consid-

ering the "Defense of Legitimate Non-Discriminatory Reasons." While AHDC objected to this jury instruction as to its separate claim of intentional discrimination, it did not object to instructing on this defense in relation to its disparate impact claim. Failure to object to an instruction waives the right of review. *Bird v. Lewis & Clark College*, 303 F.3d 1015, 1022-23 (9th Cir. 2002).

**[7]** We have considered other points made by AHDC on this appeal and find them without merit. Judgment for the City, the councilmembers and the citizens was properly entered.

*Attorney fees.* "Contract claims also were presented," the district court, ruling on attorney fees, observed but offered no comment. The claims, based on what AHDC first called "covenants" and later called "estoppel certificates," were what the district court found to be "adhesion contracts" attached by McCaffrey Development to the sales of property neighboring Wellington. Only McCaffrey Development and the purchasers were parties to these contracts. AHDC had nothing to do with their preparation, wording, and execution. It was the unanimous testimony of the parties to the contracts that the purchasers agreed not to protest zoning changes if any were sought. Neither Robert McCaffrey nor any purchaser of the properties understood the waivers to embrace the financing of a housing project. As the district court ruled in granting summary judgment, AHDC's interpretation of these agreements was irrelevant to their meaning. AHDC could not foist upon the contracting parties a meaning favorable to it and unknown to them when they made the agreements. It is not evident that AHDC had a basis for alleging in its second amended complaint that it alone knew what the agreements meant or for alleging that the contracts were covenants not to object or oppose the funding of multi-family housing at the Wellington site, or to allege that the citizen defendants had tortiously induced the breach of these "written covenants" or had themselves broken them, or to include as defendants to these

claims certain citizens, Todd Tolbert, Hernand Koubratoff, Travis Compton, Orie Reed, Richard Robertson, and Janet Reid-Bills, who had not signed the agreements, or to name Richard Robertson in the second complaint, filed nearly two years after the first complaint, and to renew the error on this appeal when all along the person AHDC intended to sue was Richard Robinson.

In the second amended complaint AHDC charged the citizen defendants with fraud in executing the agreements. This claim not only attributed AHDC's interpretation to the agreements but accused the citizens of duping McCaffrey in signing what was required. Facts do not appear to have been put forward by AHDC to support this accusation. AHDC had had two years to learn the truth from McCaffrey before its claim was advanced.

In opposing summary judgment, AHDC attempted to back away from some of its allegations in the second amended complaint. It attempted to recast its claim that the citizen defendants had breached a contract with AHDC and perpetrated fraud upon McCaffrey as a claim that they had merely interfered with AHDC's own contract with McCaffrey. What AHDC did not acknowledge was that the means by which this interference was allegedly accomplished was the breach of the adhesion agreements.

Consideration may also be given to the damages sought by AHDC. In its first complaint, AHDC alleged that the citizens had violated the California Bane Civil Rights Act and so could be liable for treble damages. Cal. Civ. Code § 52. The allegation depended on a showing that the citizens had violated civil rights and that AHDC had standing to seek redress for the violations. On October 21, 1997, the district court held that AHDC did not have the requisite standing and that none of the acts the citizens had allegedly committed had violated the Bane Civil Rights Act. On the basis of these allegations,

made without standing, AHDC had threatened each citizen with $27 million of potential liability.

A lawsuit seeking this sort of damages against each citizen casts a cloud over his or her credit. As AHDC could not have expected to recover these amounts from the citizens, the inference may be drawn that the claims against the citizens were advanced *in terrorem*, to scare off anyone who would resist AHDC's demands on local government. That inference is strengthened by the testimony of Michael Shulte from AHDC as to how the individual defendants were selected: "the number of times essentially that the person protested."

A separate cause of action against the citizens was that they did "threaten, intimidate and interfere" with AHDC's project. AHDC supported this serious charge with references to shouts of hostility from anonymous opponents of its project. As the district court noted, AHDC failed to marshal this evidence and put on the district court the burden of searching the record. In the end, the district court found that AHDC had produced no evidence of threat of violence or act of intimidation that could be laid to the defendants.

The district court construed the complaint to allege that the citizens had interfered with AHDC's project by merely verbal opposition. The district court stated that until *White v. Lee*, 227 F.3d 1214 (9th Cir. 2000), had clarified that First Amendment rights prevailed over the fair housing laws it was not clear that such speech was free from liability. In that light, prior to *White*, AHDC's allegation of interference stated a possible claim, so attorney fees should not be awarded because AHDC advanced it. The citizens argue that *White* was not new law. They are correct.

In distributing flyers advocating a controversial political position, the citizens were exercising the freedom of speech assured by the First Amendment. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995). The citizens were also

exercising the complementary right guaranteed by that amendment to associate with others in pursuit of a political objective. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958). The exercise of these constitutional rights is not deprived of protection if the exercise is not politically correct and even if it is discriminatory against others. *Boy Scouts of America v. Dale*, 530 U.S. 640, 660 (2000). Provided that the exercise of these rights does not incite imminent violence, it is free from governmental suppression or sanction even if the speakers advocate violation of law. *Brandenburg v. Ohio*, 395 U.S. 444 (1969) (per curiam).

As important as the objectives of the federal and state fair housing laws are, nothing in our constitutional history has suggested that they trump the First Amendment or that they outweigh the exercise of First Amendment rights. Indeed the preeminence of the Amendment over fair housing was so firmly established by 1992 that officials of the federal Fair Housing Administration were denied qualified immunity and held liable in damages for chilling the exercise of these rights by three citizens of Berkeley opposed to a nonprofit's development of housing for handicapped and homeless persons. *White v. Lee*, 227 F.3d at 1241. *White v. Lee* was not a bolt from the blue but the application of established law. What was true as to the lawless action of federal officials in 1992 is equally true of the attack launched by AHDC on the constitutional rights of the citizens of Fresno in 1997.

The test on this issue is not whether AHDC asserted the claim of interference in bad faith but whether AHDC had an objective basis for the allegation to amount to a cause of action. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 418-21 (1978).

As noted above, AHDC in appealing the grant of summary judgment to the citizens used a caption referring to the citizens "making threats and conspiring" but did not advance any evidence of either activity. The appeal did make the argument

that violation of the adhesion agreements was not protected by the First Amendment. This argument was far off the mark of the rationale for the district court's decision. It, however, continued to charge the citizens with contract-breaking, tortious interference, and fraud long after it was clear that these allegations were without foundation.

[8] As the district court never ruled on the request for attorney fees based on the fraud and tort claims in AHDC's complaint, we remand to the district court to make an award on claims we have found baseless. As the district court made no ruling on the request for fees based on the contract claims, we similarly remand for an award of attorney fees on these claims that we have also found baseless. As the district court erred as to the state of First Amendment law, we reverse its ruling on the request for fees in connection with the citizens' defense of the intimidation and interference claims and remand for an award of fees on these claims.

In the determination of the fees, what has been spent on this appeal is to be included. In assessing the fees, it will be appropriate for the district court to take into account that the citizen defendants had to defend every aspect of a case claiming astronomic damages from them. However unmeritorious the district court ultimately discovered the contract, tort, fraud, and intimidation claims to be, the defendants were forced over a period of several years to defend against each of these charges.

We reject AHDC's appeal of the district court's award of costs in favor of Mathys, Compton, and the other citizen defendants. There is a presumption in favor of awarding costs to the prevailing party, *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1079 (9th Cir. 1999), and AHDC has failed to rebut that presumption. We also reject the City's cross-appeal of the district court's order denying it costs, since the district court provided adequate reasons for its exercise of discretion.

*Association of Mexican-American Educators v. California*, 231 F.3d 572, 591 (9th Cir. 2002) (en banc).

For the foregoing reasons, the judgment of the district court in favor of the City, Mathys, and the citizens is AFFIRMED. The district court's order taxing costs in favor of Mathys, Compton and other citizen defendants and declining to tax costs in favor of the City is similarly AFFIRMED. The case is REMANDED for the award of attorney fees to the citizens in accordance with this opinion.