**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LUCKY BREAK WISHBONE CORPORATION,<br><br>Plaintiff - Appellee,<br><br>v.<br><br>SEARS ROEBUCK AND CO, a New York corporation; YOUNG & RUBICAM INC, a Delaware corporation,<br><br>Defendants - Appellants. | No. 08-35933<br><br>D.C. No. 2:06-cv-00312-TSZ<br><br>MEMORANDUM * |
| LUCKY BREAK WISHBONE CORPORATION,<br><br>Plaintiff - Appellant,<br><br>v.<br><br>SEARS ROEBUCK AND CO, a New York corporation; YOUNG & RUBICAM INC, a Delaware corporation,<br><br>Defendants - Appellees. | No. 08-35985<br><br>D.C. No. 2:06-cv-00312-TSZ |

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, Senior District Judge, Presiding

Argued and Submitted February 3, 2010
Seattle, Washington

Before: ALARCÓN, W. FLETCHER and RAWLINSON, Circuit Judges.

Appellants Sears, Roebuck and Co. and Young & Rubicam, Inc. (hereinafter "Sears") appeal the judgment entered for Appellee Lucky Break Wishbone Corp. ("Lucky Break") following a jury trial. Lucky Break cross-appeals from the district court's order preventing it from presenting evidence on a part of its indirect profits claim. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

I

"To establish copyright infringement, the holder of the copyright must prove both valid ownership of the copyright and infringement of that copyright by the alleged infringer." *Entm't Research v. Genesis Creative Group*, 122 F.3d 1211, 1217 (9th Cir. 1997).

Sears contends that the district court erred in ruling on summary judgment that Lucky Break's wishbone was protectable under the Copyright Act. "To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created

2

by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991). Purely functional, utilitarian, or mechanical aspects of a sculptural work may not receive copyright protection. 17 U.S.C. § 101; *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 34 F.3d 1140, 1146 (9th Cir. 2003). Lucky Break met this standard on summary judgment. In his deposition testimony and declaration, Dale Hillesland explained that he manipulated the graphite electrodes by hand to make the wishbone "all nice and round and smooth," or as he later explained it, "more attractive and sleek looking." He sanded down "sharp areas," rounded the head of the wishbone, and "thinned . . .up" the arms. Dr. Steadman testified in his deposition that the Lucky Break wishbone had a number of elements that distinguished it from a natural wishbone and did not serve any functional purpose. On summary judgment, it was undisputed that these multiple variations were the intentional product of Hillesland's creativity and aesthetic design. They went beyond mere copying and did not serve a functional purpose; they were therefore sufficient to constitute original expression. Accordingly, the district court correctly concluded on summary judgment that Lucky Break had a valid copyright in the Lucky Break wishbone.

3

During trial, Sears sought reconsideration of this order. The district court did not abuse its discretion in denying Sears's motion for reconsideration. The new evidence presented on reconsideration did not undermine the district court's earlier conclusion that the Lucky Break wishbone was original. Sears did not conclusively establish the origin of the "Cimtech file" or the date it was first provided to Sears. Nor did the file itself create a genuine issue of material fact as to originality, given the existence of significant differences between the natural and Lucky Break wishbone that Sears's theory of the Lucky Break wishbone's creation cannot explain. Accordingly, we affirm the district court's grant of summary judgment to Lucky Break on the question of originality.

II

Sears challenges on several grounds the conclusion that it infringed Lucky Break's copyright. First, Sears contends that the district court erred in denying Sears's motion for summary judgment on the issue of infringement. Because the case proceeded to trial and verdict on that issue, we may not review this determination on appeal. *See Affordable Housing Dev. Corp. v. City of Fresno*, 433 F.3d 1182, 1193 (9th Cir. 2006); *De Saracho v. Custom Food Machinery, Inc.*, 206 F.3d 874, 877-78 (9th Cir. 2000).

Second, Sears contends that the district court abused its discretion in refusing to preclude plaintiff's expert, Dr. Steadman, from testifying about virtual identity. To prevail, Sears must show that the district court abused its discretion in admitting the testimony and that the error was prejudicial. *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 987-88 (9th Cir. 2009). Sears has not made such a showing. "[A] witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms," *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004), and "a district court does not abuse its discretion in allowing experts to use legal terminology," *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1059 (9th Cir. 2008). Dr. Steadman's testimony about the differences between the Lucky Break production wishbone and natural turkey wishbones was relevant and helpful to the jury. Steadman's testimony as to whether the two plastic wishbones were "virtually identical" aided the jury in understanding the significance of the features that Steadman identified and the extent to which they made the wishbones the same. Moreover, Sears cannot show that allowing the question was prejudicial in light of the rest of the admissible testimony. Dr. Steadman had already testified about the distinguishing features of the Lucky Break wishbone, that the Sears wishbone possessed these features, and

5

that the Sears wishbone was a copy of the Lucky Break wishbone. The testimony to which Sears objected added little of significance to what Dr. Steadman's testimony had already established. Accordingly, the district court did not abuse its discretion in permitting the testimony.

Third, Sears renews its objection to jury instructions concerning infringement and authorship. We review a district court's formulation of civil jury instructions for abuse of discretion, and review *de novo* whether a jury instruction misstates the law. *Dream Games*, 561 F.3d at 988. Sears's objections are without merit. The district court made clear in Instruction 15 that proving infringement required copying of original elements, and the court therefore acted within its discretion not to include a redundant statement that copying of "unoriginal elements" is not infringement. Instruction 15A made clear Lucky Break's need to demonstrate "independent[]" creation *plus* "at least some minimal creativity," employing language virtually synonymous with that requested by Sears. Instruction 15E defined virtual identity at length and stated in mandatory language that the jury had to find virtual identity; adding the term "thin copyright" would have been redundant. As to authorship, Instruction 15B adequately distinguished between an "author" and other "contributor[s]" to a work and made clear that the "author" was Dale Hillesland; together with Instruction 15A, Instruction 15B made

6

clear that the original, protectable elements of the Lucky Break wishbone were those created independently by the work's author. Viewing these instructions together, we hold that the district court properly instructed the jury, neither misstating the law nor abusing its discretion.

Fourth and finally, Sears contends that the jury's verdict was not supported by substantial evidence. We conclude that the record contained sufficient evidence to support the jury's verdict. Lucky Break met its burden on the issues of ownership and originality as a result of the summary judgment ruling. The parties' stipulations established that Cimtech scanned a real turkey wishbone and provided the scanned data to Lucky Break; that a computer model was created from the scanned data; that Hillesland used the model to make graphite electrodes; that Hillesland finished the graphite electrodes by hand; and that Hillesland used the finished graphite electrodes to create a mold cavity for the Lucky Break wishbones. Ahroni testified that he instructed Cimtech only to create a 3D copy of the natural wishbone and not to make any alterations to it, and that he met with Hillesland, showed him the natural wishbone, gave him a copy of the Cimtech data, and asked him to create a mold. Steadman testified that the prototype wishbone contained features that distinguished it from natural turkey wishbones. There was also physical evidence of the graphite electrodes, molding cavity,

7

computer models, the natural wishbone used as a model, Lucky Break wishbones, and third party plastic wishbones that did not contain the same distinguishing features.

This was sufficient circumstantial evidence from which a jury could have determined that the identification of certain elements in the Lucky Break wishbone that did not exist in natural wishbones meant that the Lucky Break wishbone could not have been created simply by scanning the natural wishbone; that Hillesland had to have introduced the identified, unique features through the model and mold-making process; that these unique features were therefore original, protectable elements of the wishbone; and that the Sears wishbones infringed these original features. Accordingly, we conclude that based upon the district court's summary judgment ruling on originality, and the stipulations, testimony, and physical evidence presented at trial, the jury's verdict was supported by substantial evidence.

III

Sears argues that the jury's award of actual damages for infringement of the wishbone and product warning was not supported by substantial evidence. "Actual damages are usually determined by the loss in fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of

8

the copyrighted work to the infringer." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004). Sears contends that actual damages should be measured by Lucky Break's lost profits, and that the jury failed to deduct the cost of manufacturing the wishbones in computing profits. The jury is not restricted, however, to awarding lost profits. *See id.* Even if it were so restricted, Lucky Break quoted a price of 32.9 cents to Sears per individually packaged wishbone with a warning similar to the kind Sears eventually used, amounting to a total of $329,263.20 for 1,000,800 wishbones. This amount is substantially higher than the jury's awards of $190,152 in actual damages for infringement of the wishbone and $30,024 in actual damages for infringement of the warning. We cannot conclude, therefore, that the jury failed to take the cost of manufacturing into account in determining lost profits or what the fair market value of a lost license fee would have been. The jury was not asked to explain its reasoning and was properly instructed. Because the total damages award was reasonable based upon the evidence presented at trial, we uphold the jury's award of actual damages as supported by substantial evidence.

As for indirect profits, Sears objects that the jury failed to properly deduct expenses and apportion Sears's profits in awarding damages. To recover indirect profits, a copyright holder must demonstrate a "causal relationship between the

9

infringement and the profits generated indirectly from such an infringement."

*Mackie v. Rieser*, 296 F.3d 909, 915-916 (9th Cir. 2002). Lucky Break introduced

evidence sufficient to establish causation, specifically that the wishbone coupon

was redeemed at a rate 42.7% higher than the average rate of bounce-back coupons

distributed in December.

The burden is on the copyright holder "to present proof only of the

infringer's gross revenue." 17 U.S.C. § 504(b). In presenting proof of gross

revenue, Lucky Break needed to demonstrate "the revenue stream . . . [that] bear[s]

a legally significant relationship to the infringement," but was not required "to

separate the gross profits resulting from the infringement from the profits resulting

from other sources." *Polar Bear*, 384 F.3d at 711-12. Lucky Break met this

burden by introducing evidence that Sears took in $5,150,045 in revenue during

sales in which coupons were actually redeemed.

The burden then shifts to the infringer to demonstrate its "deductible

expenses and the elements of profit attributable to factors other than the

copyrighted work." 17 U.S.C. § 504(b). Sears introduced evidence of expenses

and also contended that the increased rate of redemption and sales was fully or

partially attributable to factors other than the infringing wishbone. The jury

awarded $1,479,404, demonstrating that it credited some, but not all, of Sears's

10

evidence and arguments. Because "the jury did not delineate the individual components of its total indirect profits award, it is impossible to tell whether the . . . award . . . was duly apportioned. . . . In the absence of evidence to the contrary, we presume that the jury fulfilled its duty to apportion profits." *Polar Bear*, 384 F.3d at 713. The jury awarded only a portion of Sears's gross revenue for the relevant period, and was not asked to specify what expenses it chose to deduct and how it chose to apportion profits. The gross revenue figure presented by Lucky Break was limited to transactions in which the coupon was redeemed, and an award of just under 30% of the gross revenue for those transactions was reasonable based upon the evidence presented at trial. Moreover, the burden was on Sears to demonstrate otherwise, and "[a]ny doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514 (9th Cir. 1985). Accordingly, we conclude that the indirect profits award was supported by substantial evidence.

IV

Young & Rubicam, Inc. contends that the district court abused its discretion by not awarding it the full amount of its claim for attorney's fees and costs. Recovery of attorneys' fees for a prevailing party is not automatic under the Copyright Act; the district court has "wide latitude to exercise 'equitable

11

discretion'" in determining whether an award would further the underlying purposes of the Act. *Entm't Research*, 122 F.3d at 1229; *see* 17 U.S.C. § 505; *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). Here, the district court thoroughly reviewed the billing statements and concluded that a limited award of attorney's fees and costs was warranted in light of the "very limited favorable result" that Young & Rubicam achieved. It apportioned the hours between work for which fees were and were not recoverable as best as possible in light of the limited information available, and then awarded those hours at the requested rates. We hold that the district court did not abuse its discretion in doing so.

V

On cross-appeal, Lucky Break contends that the district court wrongly excluded Dr. Belch's testimony and improperly dismissed its indirect profits claim for Sears's profits made on November 19, 2005. We disagree. Prior to excluding Dr. Belch's testimony, the district court held extensive oral argument, during which Lucky Break had difficulty providing a satisfactory response to the court's probing questions about how Dr. Belch determined what portion of Sears's revenue on November 19, 2005 was related to the infringement. The district court acted within its discretion in excluding Dr. Belch's testimony as excessively speculative.

Lucky Break also complains that the district court engaged in procedural irregularities when it prevented Lucky Break from presenting its claim for profits made on November 19. The district court, however, provided Lucky Break the opportunity to be heard on whether Dr. Belch's testimony should be excluded, and after excluding his testimony gave Lucky Break the opportunity to proffer additional evidence. The district court considered the proffer and issued a ruling determining that there was insufficient non-speculative evidence for Lucky Break to go to the jury on this claim. This ruling was not an abuse of discretion. Because Lucky Break was given an adequate opportunity to be heard, any procedural irregularities were harmless.

**AFFIRMED.**

FILED

APR 07 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

***Lucky Break Wishbone Corp. v. Sears***, **Case Nos. 08-35933 and 08-35985**
**Rawlinson, Circuit Judge, concurring:**

I concur in the result.