**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

DANIEL CHAPMAN, SEAN FLANAGAN,
and HERBERT JACOBI,
            *Defendants-Appellants.*

No. 10-10338

D.C. No.
2:03-CR-00347-
JCM (PAL)

OPINION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted
May 11, 2011—San Francisco, California

Filed June 27, 2011

Before: Betty B. Fletcher and Sidney R. Thomas,
Circuit Judges, and Lee H. Rosenthal, District Judge.*

Opinion by Judge Rosenthal

---

*The Honorable Lee H. Rosenthal, District Judge for the U.S. District
Court for Southern Texas, Houston, sitting by designation.

**COUNSEL**

Daniel G. Chapman, *pro se*, for appellants Daniel G. Chapman, Sean P. Flanagan, and Herbert M. Jacobi.

Daniel G. Bogden, United States Attorney, Las Vegas, Nevada; Robert L. Ellman, Assistant United States Attorney, Las Vegas, Nevada, for appellee United States of America.

## OPINION

ROSENTHAL, District Judge:

This is the second appeal arising from the failed prosecution of Daniel Chapman, Sean Flanagan, and Herbert Jacobi for securities and investment fraud. We previously upheld the district court's dismissal of the indictment with prejudice as a sanction for the government's failure to meet its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). In the previous appeal, we also affirmed the district court's refusal to award the defendants their attorneys' fees and costs under the Hyde Amendment. *United States v. Chapman*, 524 F.3d 1073, 1089 (9th Cir. 2008).[1] The Hyde Amendment issue is again before us.

The defendants moved in the district court to reopen under Federal Rule of Civil Procedure 60(b)(3). The motion is based on an internal government memorandum written shortly after the district court dismissed the indictment. The defendants obtained the memorandum after we decided the prior appeal. The district court denied the motion to reopen and this appeal followed. We conclude that the district court did not abuse its discretion in denying the appellants' Rule 60(b)(3) motion and affirm.

## I. Background

Because the parties are familiar with the factual and procedural history, and because our prior opinion sets out the back-

---

[1]The Hyde Amendment provides that in a privately defended criminal case, the court "may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith . . . ." Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997) (codified at 18 U.S.C. § 3006A Note).

ground facts in detail, they are not repeated here. As the district court's rulings and our prior opinion make clear, the government's failures to meet its *Brady* and *Giglio* disclosure obligations amounted to flagrant prosecutorial misconduct that merited the sanction of dismissal with prejudice. The failures were revealed during the aborted trial when the government questioned prosecution witnesses about undisclosed prior convictions. The government initially contended that it had produced documents relating to the prior convictions, but, when the district court asked for evidence of such production, the government "abruptly changed course" and stated that "in an abundance of caution rather than find the record of what we turned over, we'll make another copy of everything right now and provide it to the defense counsel immediately." *Chapman*, 524 F.3d at 1078. The next day, the defendants' counsel alerted the district court that the government had just delivered hundreds of pages of previously undisclosed documents, "some 650 pages [consisting] of rap sheets, plea agreements, cooperation agreements, and other information related to numerous government witnesses, including at least three important witnesses whose testimony was already complete." *Id.* at 1079. After a hearing, the district court declared a mistrial and dismissed the indictment with prejudice, stating that the government had acted "flagrantly, willfully, and in bad faith" in withholding impeachment documents. *Id.* at 1080. The district court denied the defendants' motion for fees and costs on the grounds that the defendants were not "prevailing parties" under the Hyde Amendment and there was no basis to conclude that the entire case against the defendants was "vexatious, frivolous, or in bad faith." *Id.* at 1088-89.

We affirmed both the dismissal and the denial of relief under the Hyde Amendment. We reasoned that although a dismissal with prejudice "materially alters the legal relationship of the parties . . . our cases have also required a prevailing party to have 'receive[d] at least some relief *on the merits* of his claim.' " *Id.* at 1089 (quoting *United States v. Campbell*, 291 F.3d 1169, 1172 (9th Cir. 2002)). Because the district

court "never suggested that this prosecutorial misconduct was relevant to Defendants' guilt or innocence," and the dismissal "was purely intended to sanction the government's flagrant *Brady*/*Giglio* and procedural violations and the misrepresentations used to conceal those violations," we found that the defendants had not received relief on the merits and were not "prevailing parties" as required under the Hyde Amendment. *Id.* In a footnote, we added:

> This is not to suggest that a dismissal for flagrant discovery violations could not, in other cases, constitute a sufficient judgment on the merits to bestow a defendant with "prevailing party" status. The legislative history of the Hyde Amendment makes clear that it was intended to protect against some types of disclosure violations. *See* 143 Cong. Rec. H7786, H7791 (daily ed. Sept. 24, 1997) (statement of Rep. Hyde) (noting that the amendment would apply when prosecutors "keep information from you that the law says they must disclose," when they "hide information," and when they "do not disclose exculpatory information to which you are entitled."). If documents were *intentionally* withheld to bolster the prosecution's case, that misconduct would be relevant to the defendant's innocence in that it would have a tendency to suggest weakness in the prosecution's case. Accordingly, a dismissal on those grounds could be a judgment on the merits for Hyde Amendment purposes. Otherwise, minor discovery violations would be relevant under the Hyde Amendment, but major violations—those sufficient to prompt dismissal of the indictment—would bar relief. That question, however, is not squarely presented in this case, so we leave it for another day.

*Id.* at 1089 n.6.

The motion for relief under Rule 60(b)(3) at issue in the present appeal is based on a memo the defendants received

from the IRS in response to a subpoena *duces tecum* issued in a separate case. The memorandum was written by J. Wesley Eddy, the Special Agent in Charge for the Las Vegas office of the IRS's Criminal Investigation Division, three days after the district court dismissed the indictment against the defendants (the "Eddy Memo"). The defendants contend that the following language from the Eddy Memo shows that one of the AUSAs intentionally withheld documents covered by *Brady* or *Giglio*:

> NCIC checks were done on the witnesses prior to the original scheduled trial date, but the trial was continued and nothing turned over to the defense at that point. Then, 2-3 days before the new trial date, the decision was made that new NCIC runs needed to be done so that they could be turned over to the defense. This request was completed by the 2nd day or so of the trial and turned over to AUSA Frayn.

> At the start of the 2nd week of the trial, SA Payne noticed that AUSA Frayn was still carrying around the NCIC information. He asked her about this and whether they had been turned over to the defense. *AUSA Frayn replied that AUSA Damm had decided they weren't going to be turned over, but that instead the information they contained would be brought out on the stand during direct.* She added that she and Damm had a disagreement about this decision.

The Eddy Memo also discusses other issues with the prosecution and trial and notes the conclusion by special agents assigned to the case "that the underlying cause of these issues was the failure of the AUSAs to devote sufficient time to trial preparation." The Eddy Memo was sent to the AUSA who was the first-chair lawyer at the trial.

In the district court, the defendants urged the Eddy Memo as the basis of their Rule 60(b)(3) motion to reopen the Hyde

Amendment fee and cost request. The defendants argued that the Eddy Memo showed that the United States had committed a fraud on the court by defending its failures to disclose as unintentional. The defendants also argued that they should be "deemed a prevailing party" because, in light of the Eddy Memo, the dismissal of the indictment was a "judgment on the merits" for the purpose of the Hyde Amendment claim.[2]

After a hearing, the district court denied the defendants' motion. The district court found that the Eddy Memo simply reaffirmed its prior conclusion about the nature and extent of the prosecutorial misconduct. Considering the Eddy Memo with the prior record, the district court stated that the government's discovery misconduct had been "sloppy" and "careless, negligent." The court also stated that "[i]t certainly wasn't just innocent. It didn't happen just innocently, but it wasn't intentional either, and I just don't see this as fraud on the court. I think it takes something more, something like— and the Ninth Circuit alluded to this a little bit . . . we are not going to turn over this evidence in order to gain some sort of technical advantage, and I just don't see that the Eddy [M]emo establishes that." The district court reached the same conclusion it had reached before the Eddy Memo: the *Brady* violations were "prosecutorial misconduct at the highest level, but do not "go[ ] to the level of the defendants' innocence." On this appeal, the defendants argue that the district court abused its discretion in denying their motion to reopen under Rule 60(b)(3).

---

[2]The defendants emphasize the following representations during the previous Hyde Amendment litigation: one AUSA told the district court that "[the AUSA named in the Eddy Memo], in acting in this case did not act intentionally, that his conduct does not rise to the level of being flagrant"; the government's brief during the initial appeal characterized the failures to meet discovery obligations as "not done intentionally"; and the AUSA who had been sent the Eddy Memo stated during oral argument that the failures to disclose were unintentional.

## II. Analysis

**[1]** Rule 60(b)(3) allows a court, "on motion and just terms," to relieve a party . . . from a final judgment . . . for the following reasons: fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party."**³** Independent actions under Rule 60(b) are available "only to prevent grave miscarriages of justice." *United States v. Beggarly*, 524 U.S. 38, 47 (1998). "Courts possess the inherent power to vacate or amend a judgment obtained by fraud on the court." *Dixon v. Comm'r*, 316 F.3d 1041, 1046 (9th Cir. 2003) (citing *Toscano v. Comm'r*, 441 F.2d 930, 933 (9th Cir. 1971)). "[T]hat power is narrowly construed, applying only to fraud that defiles the court or is perpetrated by officers of the court. When we conclude that the integrity of the judicial process has been harmed, however, and the fraud rises to the level of 'an unconscionable plan or scheme which is designed to improperly influence the court in its decision,' we not only can act, we should." *Id.* (quoting *England v. Doyle*, 281 F.2d 304, 309 (9th Cir. 1960)). We review a district court's denial of a Rule 60(b)(3) motion for abuse of discretion. *De Saracho v. Custom Food Machinery, Inc.*, 206 F.3d 874, 880 (9th Cir. 2000).

**[2]** The district court acted within its discretion in finding that the Eddy Memo did not show fraud on the court or provide a basis to reopen the case to allow discovery into that issue. Contrary to the defendants' argument, the Eddy Memo is not a revelation of new information about the discovery misconduct during the trial or about the government's subsequent statements about that misconduct. The district court

---

**³**"A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment." Fed. R. Civ. P. 60(d). Chapman filed his motion more than a year after final judgment. However, Rule 60(d)(3) states that Rule 60 does not limit a court's power to "set aside judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3).

gave what it described as the "Reader's Digest Version" of the Eddy Memo: "This hasn't been turned over, what are we going to do? And [one of the AUSAs] says, we'll handle it on direct." The Eddy Memo shows that one AUSA involved in the case made an intentional decision to delay disclosing certain impeachment information to the defendants, and that other AUSAs disagreed.[4] The Eddy Memo also states that the prosecution had been marred by carelessness and disorganization. The district court did not abuse its discretion in concluding that the Eddy Memo was consistent with the court's prior conclusion that the government's misconduct during trial was a mixture of intentional and negligent pretrial and trial acts and omissions. *See Dixon*, 316 F.3d at 1046 ("[The court's inherent power to vacate a judgment] is narrowly construed, applying only to fraud that defiles the court or is perpetrated by officers of the court.").

**[3]** The government's statements in the briefs and argument presented in the prior appeal similarly reflected the mix of what the district court described as "not unintentional," "not innocent," and "negligent, sloppy" discovery misconduct in the failed prosecution. This circuit's precedent contemplates a higher level of culpability than that found by the district court found and reflected by the record of the prior appeal. *See Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1104 (9th Cir. 2006) (describing fraud on the court as " 'fraud perpetrated by officers of the court' " that prevents the " 'judicial machinery' " from " 'perform[ing] . . . its impartial task of adjudging cases that are presented for adjudication' " (quoting *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1988))).

Both parties discuss our decision in *Dixon v. Commissioner*, 316 F.3d 1041 (9th Cir. 2003). *In Dixon*, tax test-case petitioners entered into secret settlement agreements with

---

[4]The impeachment information described in the Eddy Memo was disclosed before the dismissal.

opposing IRS counsel before trial in the Tax Court. Before and during trial, the IRS attorneys deceived the court to prevent it from learning about the agreements. Because these test-case petitioners had already settled their claims and had no stake in the outcome, the trial was a "charade fraught with concealed motives, hidden payments, and false testimony." *Id.* at 1047. When the test-case petitioners attempted to enforce their secret agreements, senior IRS officials became aware of the scheme and informed the court. We overturned the lower court's finding that there was no fraud on the court because no party was prejudiced by the fraud. Noting that "[p]rejudice is not an element of fraud on the court," we emphasized that the IRS attorneys' conduct "was clearly designed to defile the court itself" and "violated the rights of the test case petitioners and the more than 1,300 taxpayers who agreed to be bound by the outcome of the Tax Court proceeding." *Id.* at 1046-47.

**[4]** *Dixon* does not support the defendants' argument that the district court abused its discretion in finding no fraud on the court. The Eddy Memo confirms what the district court already knew when it first denied the defendants' motion for fees and costs under the Hyde Amendment—that the government had affirmatively misrepresented its compliance with its disclosure obligations, both before and after the misconduct was revealed. But as the district court found at that time, and found again in response to the motion now on appeal, the misrepresentations did not "ris[e] to the level of a fraud on the court," amount to a "clear attempt to defile the court," or cause "a charade fraught with concealed" motives. *Dixon*, 316 F.3d at 1047. Denying the motion on that basis was consistent with our precedents and within the district court's discretion.

**[5]** The defendants' argument that the Eddy Memo entitles them to reopen the Hyde Amendment issue because it shows that they were prevailing parties is similarly unavailing. Because the Eddy Memo reinforces the earlier determination made by the district court and upheld on appeal, the Memo

does not provide a basis to find that the dismissal as a sanction for prosecutorial misconduct made the defendants prevailing parties under the Hyde Amendment. The defendants emphasize that footnote 6 to our decision in *Chapman* noted that "[i]f documents were *intentionally* withheld to bolster the prosecution's case, that misconduct would be relevant to the defendant's innocence in that it would have a tendency to suggest weakness in the prosecution's case." *Chapman*, 524 F.3d at 1089 n.6. But the district court, though thoroughly familiar with the withheld information and the trial evidence, and though afforded several opportunities to decide whether the information went to the merits of the government's case, consistently concluded otherwise. The Eddy Memo does not provide a sufficient basis to conclude that the government's failure to disclose impeachment evidence suggested substantive weakness in the merits of the case that made the failure to disclose relevant to innocence. To the contrary, the district court was clear that the dismissal with prejudice was a sanction for discovery misconduct and not a judgment on the merits that could render the defendants prevailing parties under the Hyde Amendment. The record, including the Eddy Memo, does not provide a basis to find that the district court's refusal to reopen that decision was an abuse of discretion.

**AFFIRMED.**